Richard A. LIPPE, Archie R. Dykes, and John J. Robbins, as Trustees for Keene Creditors Trust, Plaintiffs,

v.

BAIRNCO CORPORATION,
et al., Defendants.

No. 96 Civ. 7600 (DC).

United States District Court,
S.D. New York.

Oct. 13, 1998.

848

Levy Phillips & Konigsberg, LLP by Stanley J. Levy, New York City, Budd, Larner, Gross, Rosenbaum, Greenberg & Sade, P.C., by David R. Gross, Short Hills, NJ, for Plaintiffs.

Schulte Roth & Zabel, LLP by Irwin J. Sugarman, Brooks R. Burdette, Thomas R. Fallati, New York City, for Kaydon.

McCarter & English by Andrew T. Berry, Charles F. Rysavy, Veronica Hursthouse, New York City, for Genlyte.

Debevoise & Plimpton by John H. Hall, R. Townsend Davis, Jr., Jeremy Feigelson, Andrew K. Glenn, Justin S. Weddle, New York City, for Bairnco, Arlon, Kasco and Shielding.

## OPINION

CHIN, District Judge.

In this case, the Trustees of Keene Creditors Trust, acting on behalf of the now bankrupt Keene Corporation ("Keene"), allege that the defendants engaged in a massive

fraudulent scheme to shield Keene's assets from asbestos creditors by conveying profitable Keene divisions to subsidiaries of a holding company, Bairnco Corporation ("Bairnco").

Twenty-one defendants were originally named in the complaint. Twenty moved to dismiss and/or for summary judgment. I dismissed the claims against four defendants in an Opinion dated February 6, 1998. *See Lippe v. Bairnco Corp.*, 218 B.R. 294 (S.D.N.Y.1998). I also dismissed the claims against an additional defendant *sua sponte.* Eight motions are pending.

I now decide the motions filed on behalf of the six corporate defendants in this case, that is, Kaydon Corporation ("Kaydon"), Genlyte Group ("Genlyte"), Kasco Corporation ("Kasco"), Shielding Systems Corporation ("Shielding"), Arlon Inc. ("Arlon"), and Bairnco. The corporate defendants move for summary judgment on statute of limitations grounds and to dismiss pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6).

For the reasons that follow, the motions are granted in part and denied in part.

## BACKGROUND

### A. The Facts

The facts are set forth in the Court's prior decision, familiarity with which is assumed. *See Lippe v. Bairnco Corp.*, 218 B.R. 294, 297–98 (S.D.N.Y.1998); *see also In re Keene Corp.*, 164 B.R. 844, 846–48 (Bkrtcy.S.D.N.Y. 1994); *In re Keene Corp.*, 162 B.R. 935 (Bkrtcy.S.D.N.Y.1994). They may be summarized as follows:

In the late 1970's, as asbestos-related illnesses started to appear, individuals exposed to asbestos began filing claims against Keene. Asbestos-related property damage, personal injury, and wrongful death cases were being brought against Keene in rapidly increasing numbers.

In time, Keene began to consider restructuring and reorganizing its assets. In 1981, Keene formed a holding company, Bairnco, and Keene itself eventually became a wholly-owned subsidiary of Bairnco. From 1983 through 1989, Keene transferred five profitable divisions to newly-created Bairnco subsidiaries (the "Transactions"). Although the Bairnco subsidiaries paid Keene substantial consideration for the purchases, plaintiffs contend that they paid far less than the assets were actually worth.

In August 1990, Bairnco spun off Keene. According to plaintiffs, Bairnco stripped Keene of its most valuable assets but left it with enormous asbestos liabilities. In December 1993, with some 101,000 asbestos-related lawsuits pending against it, Keene filed for bankruptcy.

### B. Plaintiffs' Causes of Action Against the Corporate Defendants

The amended complaint contains fifteen causes of action. It asserts the following claims against the corporate defendants:

1. Claims for fraudulent conveyance, based on actual fraud, pursuant to N.Y. Debt. & Cred. L. ("NYDCL") § 276,[1] against all six corporate defendants (Am. Cmplt. Count I);

2. Claims for fraudulent conveyance, based on constructive fraud, pursuant to NYDCL §§ 273, 273–a, 274, 275,[2] against all

---

1. Section 276 is entitled "Conveyance made with intent to defraud" and reads as follows:

 Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

2. Sections 273, 273–a, 274, and 275 provide that certain transactions are "fraudulent" without regard to the transferor's "actual intent." Section 273 is entitled "Conveyances by insolvent" and applies to conveyances made and obligations "incurred by a person who is or will be thereby rendered insolvent ... if the conveyance is made or the obligation is incurred without a fair consideration."

 Section 273–a is entitled "Conveyances by defendants" and applies to conveyances made "without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him ... if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment."

 Section 274 is entitled "Conveyances by persons in business" and applies to conveyances made "without fair consideration when the per-

six corporate defendants (Am. Cmplt. Counts II–V);

3. A claim for fraudulent conveyance, pursuant to NYDCL §§ 273–278,[3] against Bairnco, Kaydon, and Genlyte for the Kaydon and Genlyte spinoff transactions (Am. Cmplt. Count VI);

4. A claim for fraudulent conveyance, pursuant to NYDCL §§ 273–278, against Bairnco for receipt of unlawful dividends (Am. Cmplt. Count VIII);

5. A claim for tort liability against all six corporate defendants as "successor corporations" (Am. Cmplt. Count IX);

6. A claim for tort liability against Bairnco, based on a theory of piercing the corporate veil (Am. Cmplt. Count X); and

7. A RICO claim, pursuant to 18 U.S.C. §§ 1961 *et seq.*, against all six corporate defendants (Am. Cmplt. Count XIV).

## C. *Corporate Defendants' Motions*

The amended complaint is 119 pages long and contains more than 335 paragraphs. It addresses events dating back more than 30 years and challenges numerous, complicated transactions that took place during the 1980's. Recognizing the complexity of the case, the parties entered into a "Stipulated Case Management Order," dated June 30, 1997 and approved by the Court on July 3, 1997. The parties agreed to engage in limited discovery on the statute of limitations issue prior to the filing of motions.

Discovery on the statute of limitations issues having now been taken, the corporate defendants move for summary judgment on statute of limitations grounds for dismissal of plaintiffs' fraudulent conveyance causes of action, Counts I–VI and VIII of the amended complaint. The corporate defendants also move to dismiss the entire amended complaint for failure to plead fraud with particularity and failure to state a claim upon which relief can be granted, pursuant to Rules 9(b) and 12(b)(6).

I address the motions for summary judgment first and then the motions to dismiss.

## DISCUSSION

### A. *The Motions for Summary Judgment*

#### 1. *Standing: Avoidance Claims and 11 U.S.C. § 544(b)*

■ All of plaintiffs' fraudulent conveyance causes of action are brought pursuant to § 544(b) of the Bankruptcy Code, which reads:

> The trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim . . . .

11 U.S.C. § 544(b). Section 544(b) does not establish substantive provisions for the avoidance of transfers. Rather, it provides a trustee with the ability, pursuant to applicable nonbankruptcy law, to avoid certain transfers. That ability is dependant upon the rights of actual creditors under relevant state law. In this case, the relevant nonbankruptcy law is New York law.[4]

---

son making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital. . . ."

Section 275 is entitled "Conveyances by a person about to incur debts" and applies to conveyances made and obligations incurred "without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature. . . ."

3. Sections 277 and 278 appear only in Counts VI and VIII of the amended complaint. Section 277 concerns the conveyance of partnership property, and is inapplicable because the corporate entities are not partnerships. Section 278 concerns the rights of creditors whose claims

have matured and provides that "where a conveyance or obligation is fraudulent as to a creditor . . . [whose claims have matured, the creditor may set aside the conveyance to the extent necessary to satisfy his claim or disregard the conveyance and attach the property at issue] as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase . . . ."

4. Pursuant to a "Stipulation of Settlement" entered into on March 11, 1996 by and among (i) Bairnco and its wholly-owned subsidiaries Kasco Corporation, Shielding Systems Corporation, and Arlon, Inc., (ii) Kaydon Corporation, (iii) The Genlyte Group Inc., (iv) certain Subscribing Individuals, (v) Keene Corp., (vi) the Official Committee of Unsecured Creditors of Keene Corp.,

 Section 544(b) permits the trustee to exercise "whatever rights of avoidance any creditor holding an unsecured allowable claim could have exercised on his own behalf under applicable state or federal law." *In re OPM Leasing Servs., Inc.*, 32 B.R. 199, 201 (Bkrtcy.S.D.N.Y.1983). In exercising avoidance powers under section 544(b), a trustee acts as a representative of the creditors of the estate. A trustee's ability to obtain recovery for an estate (and its blameless creditors) therefore may not be denied because of the pre-petition wrongful conduct of the debtor. *Wedtech v. Nofziger*, 88 B.R. 619, 622 (Bkrtcy.S.D.N.Y.1988) (cited with approval in *In re Wedtech Secs. Litig.*, 138 B.R. 5, 8 (S.D.N.Y.1992)).

In *Moore v. Bay*, the Supreme Court held that the trustee's avoidance powers were not restricted to the amount that would have been recoverable had the creditor initiated an action herself or himself. 284 U.S. 4, 5, 52 S.Ct. 3, 76 L.Ed. 133 (1931). Rather, a transfer may be totally avoided even if it was avoidable only by a creditor possessing a minuscule claim, for the trustee's recovery was not for the benefit solely of the creditor whose rights were assumed, but rather, inured to the estate as a whole. In its 1973 Report, the Bankruptcy Commission recommended repealing the *Moore v. Bay* doctrine, proposing instead that recovery under § 544(b) be limited to the extent of the creditor's claim. *See generally* William L. Norton, Jr., *Norton Bankruptcy Law and Practice 2d* § 54:6 (1997 & Supp.1998). The proposal was not adopted. Indeed, a 1977 House Report indicates that courts follow the doctrine of *Moore v. Bay*. *Id.* (citing

H.R.Rep. No. 595, 95th Cong., 1st Sess. 370 (1977)).[5]

 Nonetheless, § 544(b) rights are limited to the "rights of an existing, unsecured creditor" (*id.*), because § 544(b) rights are "completely derivative of those of an actual unsecured creditor." *In re Wingspread Corp.*, 178 B.R. 938, 945 (Bkrtcy.S.D.N.Y.1995). Even though § 544(b) may permit plaintiffs to attack a transfer based on a single creditor's claim, plaintiffs will only be able to attack transfers "to the extent that a creditor with an allowable claim might avoid the transfer under applicable state or federal law." *In re Colonial Realty Co.*, 168 B.R. 506, 510 (Bkrtcy.D.Conn.1994) (quoting *In re Graven*, 936 F.2d 378, 383 n. 7 (8th Cir. 1991)). In other words, a trustee has standing to assert a cause of action under § 544(b) "only if the benefits of the action inure to all creditors ratably." *In re Colonial Realty Co.*, 168 B.R. at 510.

 To prevail on any of their avoidance claims under § 544(b), then, plaintiffs must demonstrate that an actual unsecured creditor exists who could avoid the Transactions under New York law. *See In re 9281 Shore Road Owners Corp.*, 187 B.R. 837, 851–52 (E.D.N.Y.1995); *In re Wingspread Corp.*, 178 B.R. at 946. Under New York law, a "creditor" is "a person having any claim, whether mature or unmatured, liquidated or unliquidated, absolute, fixed or contingent." NYDCL § 270.

### 2. *The Statutes of Limitations*

The claim for actual fraud pursuant to NYDCL § 276 is governed by a limitations

---

and (vii) the Legal Representative of Future Claimants of Keene Corp., the Corporate Transactions Defendants and the Committee (now the "Keene Creditors Trust") agreed "that they shall not take a position before the court in the Transactions Lawsuit that the laws of *any* state other than the State of New York apply to the determination of *any* of the causes of action pled in the complaint in that action." (*See* Fallati Aff. Ex. Z at 22) (emphasis added). The Bankruptcy Court approved that "Stipulation of Settlement" in an Order dated the same day, March 11, 1996. (*Id.*, Ex. AA).

**5.** *Moore v. Bay* has been cited with approval or as authority in numerous cases in this Circuit.

*See, e.g., American Trust Co. v. New York Credit Men's Adjustment Bureau, Inc.*, 207 F.2d 685, 689 (2d Cir.1953); *Zamore v. Goldblatt*, 194 F.2d 933, 934–35 (2d Cir.), *cert. denied*, 343 U.S. 979, 72 S.Ct. 1077, 96 L.Ed. 1370 (1952); *In re RCM Global Long Term Capital Appreciation Fund, Ltd.*, 200 B.R. 514, 522–23 (Bkrtcy.S.D.N.Y. 1996); *In re 9281 Shore Road Owners Corp.*, 187 B.R. 837, 851 (E.D.N.Y.1995); *In re Wingspread Corp.*, 178 B.R. 938, 945 (Bkrtcy.S.D.N.Y.1995); *In re Fair*, 142 B.R. 628, 630–31 (Bkrtcy. E.D.N.Y.1992); *In re Tabala*, 11 B.R. 405, 406 (Bkrtcy.S.D.N.Y.1981); *In re Newman*, 11 B.R. 628, 633 (Bkrtcy.S.D.N.Y.), *aff'd*, 15 B.R. 658 (S.D.N.Y.1981).

period of six years from the date of the alleged fraud or two years from the date of discovery, whichever is later. *See* N.Y. C.P.L.R. §§ 213(8) and 203(g).

The constructive fraud claims are governed by a six year statute of limitations. *See* CPLR § 213(1); *Orr v. Kinderhill Corp.,* 991 F.2d 31, 35 (2d Cir.1993) ("[A]ctions for constructive—rather than actual—fraud have long been subject to the catch-all limitations period of CPLR § 213(1)"); *Schoen v. Martin,* 187 A.D.2d 253, 589 N.Y.S.2d 443, 444 (1st Dep't 1992) ("The 'two years from the date of discovery' provision extending the statute of limitations beyond six years from the date of the fraudulent act does not apply to constructive fraud."); *Schwonke v. Banister,* 83 A.D.2d 752, 443 N.Y.S.2d 513, 515 (4th Dep't 1981) ("That the trustee in bankruptcy was in no position to discover any alleged fraudulent transfer until his appointment ... does not act to extend [CPLR 213(1)]."). The constructive fraud claims, with the exception of claims under § 273–a, run from the date of the allegedly fraudulent transfer. Constructive fraud claims under § 273–a, however, run from the date of entry of a creditor's final judgment. *See, e.g., Carey v. Crescenzi,* 923 F.2d 18, 20–21 (2d Cir.1991).

Under the Bankruptcy Code, if an action by the creditor is timely as of the filing of the debtor's bankruptcy petition, the trustee's time in which to bring the action is extended until the later of: (1) the end of the otherwise applicable time period; or (2) two years after the order for bankruptcy relief by the debtor. *See* 11 U.S.C. § 108(a).

In this case, Keene filed for bankruptcy on December 3, 1993. The original complaint was filed on June 8, 1995 by the Official Committee of Unsecured Creditors of Keene Corporation, within two years of the bankruptcy filing. The question, therefore, is whether plaintiffs' fraudulent conveyance causes of action against the corporate defendants were timely as of December 3, 1993, when Keene filed for bankruptcy.

The fraudulent conveyance claims other than the claims under §§ 273–a and 276 are timely only if the Transactions occurred within six years prior to Keene's bankruptcy filing, that is, on or after December 3, 1987.

Thus, the claims based on the spinoff of Genlyte's stock in 1988, the 1988 Shielding Transaction involving its acquisition of Versitron and Micro–Chassis, and the 1989 Arlon Transaction clearly are not time-barred (although plaintiffs still must demonstrate the existence of an actual unsecured creditor who could attack these Transactions under NYDCL). As to the remaining Transactions—the 1983 Kaydon Transaction, 1984 Kaydon spinoff, 1984 Genlyte Transaction, 1986 Kasco Transaction, and January 1987 Shielding Transaction—more than six years transpired between them and the time that Keene filed for bankruptcy. The claims based on these Transactions are untimely unless the statute of limitations is tolled.

The § 273–a cause of action is timely to the extent it is based on a final, still unsatisfied judgment filed on or after December 3, 1987.

The § 276 actual fraud cause of action is timely if plaintiffs can demonstrate that an unsecured creditor exists who did not discover the alleged actual fraud prior to December 3, 1991.

### 3. *Application*

■ The corporate defendants contend that plaintiffs have failed to prove the existence of at least one actual creditor who has standing under § 544(b) to avoid the Transactions. In addition, some of the corporate defendants maintain that even if actual creditors exist who do have standing, the fraudulent conveyance causes of action are barred by the statute of limitations. Thus, argue the corporate defendants, summary judgment should be granted in their favor on all of plaintiffs' fraudulent conveyance claims because (i) no actual creditors exist, or (ii) the applicable statutes of limitations prevent the plaintiffs from asserting these claims in any event.

Plaintiffs contend that there are approximately fourteen categories of claimants/creditors that provide them with standing to pursue the fraudulent conveyance causes of action in this case, and whose claims are either immune from or toll the running of the statute of limitations. (Pls. Opp. at 177).

These fourteen categories of claimants fall into five major groups: (1) governmental claimants (state and federal); (2) judgment creditors; (3) five "additional" categories of claimants (inactive docket/pleural registry, center for claims resolution, multi-district litigation, miscellaneous open cases, potential claimants from Keene records); (4) infant claimants; and (5) persons recently diagnosed with asbestos-related diseases.

The Court has carefully considered plaintiffs' claims with respect to all fourteen categories and all five groups, and plaintiffs have failed to demonstrate that triable issues of fact exist as to whether the vast majority of the categories provide plaintiffs with standing to pursue the fraudulent conveyance claims. Indeed, plaintiffs' arguments with respect to many of the categories are completely without merit.

For example, plaintiffs' reliance on the *nullum tempus occurit regi* ("time does not run against the king") doctrine with respect to the state government claimants is wholly misplaced, as New York does not recognize the doctrine and plaintiffs stipulated that they would not rely on any state law other than New York law. Nor can plaintiffs reasonably rely on the purported federal government claimants, as three claims were filed by non-governmental entities, which claims were disallowed, withdrawn, or expunged, and one contingent claim was filed by the United States Pension Benefits Guaranty Corporation, which claim was deemed withdrawn. Plaintiffs' reliance on the infant claimants with wrongful death claims is incorrect, for in each case the deceased parent was survived by an adult distributee or appointed guardian who had the right to assert the wrongful death claim on the infant's behalf. In addition, there is no basis to support plaintiffs' bald contention that the statute of limitations for any untimely claim asserted in the amended complaint should be "equitably

tolled" based on fraudulent concealment, adverse domination, or equitable estoppel.

As to plaintiffs' judgment creditor category of claimants, there do appear to be issues of fact as to the Belmer claim. Plaintiffs have presented evidence from which a reasonable factfinder could conclude that the Belmer claim resulted in a final judgment that remains unpaid. (*See* Fitzpatrick Aff. ¶ 42). The Belmer claim, however, is a claim under § 273–a, and § 273–a provides only that a conveyance deemed fraudulent thereunder is fraudulent "as to the plaintiff," if, after final judgment, the defendant fails to satisfy the judgment. It is unclear, then, whether the existence of one creditor with a timely claim under 273–a would permit the Trustees to void an entire Transaction under 544(b).[6]

I need not decide the complex questions surrounding the § 273–a cause of action at this juncture, for summary judgment must be denied because of two additional categories of claimants: (1) persons recently diagnosed with asbestos-related diseases; and (2) inactive docket and pleural registry claimants.

Plaintiffs rely on the CPLR's two-year discovery provision in claiming that persons recently diagnosed with asbestos-related diseases provide them with standing to attack all the Transactions based on actual fraud. *See* CPLR §§ 213(8) and 203(g); NYDCL § 276 (Count I of the amended complaint). Plaintiffs maintain that individuals who were exposed to asbestos, but who were unaware of any asbestos-related injury, could not have discovered the corporate defendants' "fraud." Thus, argues plaintiffs, these claimants possess timely claims against all the corporate defendants for actual fraud provided that they did not become aware of any asbestos injury, and hence the corporate defendants' fraud, until the two-year period preceding Keene's bankruptcy filing. Indeed, "[t]he statute of limitations will not bar an action unless it conclusively appears that the plain-

The majority of claimants identified as judgment creditors by plaintiffs fail to meet § 273–a requirements as a matter of law. Final judgment was never entered in the Ulmer case for instance, and plaintiffs failed to raise an issue of fact as to whether a jury verdict could somehow now be converted into a final judgment. The "Greitzer

& Locks" claimants are not "actual creditors" as a matter of public policy because plaintiffs concede that the $2500 unpaid judgments that they hold were artificially contrived. Claimants who settled with Keene but were not paid also fail because a settlement is not the same thing as a final judgment unless it is reduced to judgment.

tiff had knowledge of facts from which the alleged fraud might be reasonably inferred." *Juman v. Louise Wise Servs.*, 174 Misc.2d 49, 663 N.Y.S.2d 483, 487 (1997), *aff'd as modified*, 678 N.Y.S.2d 611 (1st Dep't 1998).

The corporate defendants contend that the Transactions were fully disclosed and matters of public record by 1990 at the very latest, such that *any* actual fraud claim based on these Transactions expired at the latest in 1992, a year before Keene filed for bankruptcy. (Kaydon Mem. at 27–40). Moreover, the corporate defendants maintain that the circumstances under which the Transactions involving them were disclosed would "suggest to a person of ordinary intelligence the probability that he has been defrauded." *Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir. 1983) (quoting *Higgins v. Crouse*, 147 N.Y. 411, 42 N.E. 6 (N.Y.1895)). When a plaintiff "shuts his eyes to the facts which call for investigation, knowledge of the fraud will be imputed" to that individual. *Id.*

The corporate defendants rely principally on *Cruden v. Bank of New York*, 957 F.2d 961 (2d Cir.1992), to support their contention that the public filings and news stories regarding the allegedly fraudulent transfers provided inquiry notice of the alleged fraud, and triggered the running of the statute of limitations against *any* putative plaintiff.

The *Cruden* plaintiffs were debenture holders who were sent letters and notices about the terms of a transaction that they later claimed was fraudulent. Despite "overwhelming evidence that all plaintiffs knew of the alleged fraud more than two years prior to filing suit," the plaintiffs alleged that they were not actually injured by the fraud until defendants defaulted on payments of the debenture interest and principal. The court rejected that argument and stated that the discovery period for a fraud action begins to run "not upon a plaintiff's having suffered an 'injury' ... but when a plaintiff suffers a loss as a result of the defendant's fraudulent act." 957 F.2d at 974. The debenture holders knew, or should have known, that they had suffered some injury, even if they could not know until a later date the precise amount of their loss.

The *Cruden* court's analysis is inapposite because the facts of that case are distinguishable from the facts at hand. Unlike the plaintiffs in *Cruden*, the claimants identified by plaintiffs could not possibly have been on notice of any alleged fraud or loss if they had no reason to know that they were afflicted with an asbestos-related injury. These individuals could not have known that they had been injured at all until their injuries started to manifest themselves. The claimants in the instant case, therefore, simply cannot be compared to debenture holders who were given actual notice of the transaction in question in the lawsuit. *See, e.g., In re H.K. Porter Co., Inc.*, Adversary No. 93–2581, at 20 (W.D.Penn. Jan. 27, 1995) (holding that fraud statute of limitations had not run as to asbestos-related claimants whose exposure occurred prior to allegedly fraudulent transfers, but who did not manifest a disease until within two years of the asbestos company's bankruptcy filing).

Accordingly, asbestos-victim claimants who were unaware of any asbestos injury prior to the two years before Keene filed for bankruptcy are not barred from asserting an actual fraud claim against any of the corporate defendants because the actual fraud claim is not time-barred. This category of claimants can be considered "actual creditors" pursuant to § 544(b) and they can attack any of the Transactions pursuant to NYDCL § 276.

Likewise, inactive docket and pleural registry claimants can attack any of the Transactions pursuant to § 544(b) and the NYDCL despite the fact that more than six years have elapsed between Keene's bankruptcy filing and several of the Transactions at issue. These claimants are individuals who filed lawsuits against Keene and other asbestos manufacturers before any asbestos-related injury had fully manifested to protect themselves from the running of the statute of limitations (and to protect themselves against arguments such as defendants' *Cruden* argument just discussed). To accommodate these "premature" cases, courts established registries and/or inactive dockets whereby plaintiffs could file claims that remained inactive but, thereby, preserve the right to reactivate the claims at some later date if the injury

progressed. (Pls. Opp. at 200–01; Fitzpatrick Aff. Ex. Q). Plaintiffs allege that such registries were established in Massachusetts, Connecticut, and several other states.

For example, in the *In re Massachusetts Asbestos Litig.* case, M.M.L. Nos. 1–5, Keene and other asbestos manufacturing and/or distributing defendants stipulated to a voluntary dismissal of some of these lawsuits so that they could be placed on an inactive docket, whereby the claimants could reactive the case by filing a simple notice of claim. Keene and these other defendants stipulated that the filing of a notice of claim by these claimants "shall toll all applicable statutes of limitation regarding any claims of the plaintiff, his or her spouse, his or her children, his or her dependents or their estates, arising from the asbestos-related injury, disease or condition ... except for claims based on wrongful death." (Fitzpatrick Aff. Ex. Q). The stipulation was then approved by the court.

These individuals are actual creditors who have standing to attack the Transactions, even those Transactions that occurred more than six years prior to Keene's bankruptcy filing. Keene waived the statute of limitations defense as to these asbestos injury claimants and, therefore, the corporate defendants' claim that these creditors do not possess timely fraudulent conveyance causes of action fails. These claimants, at the time of the Transactions, were creditors pursuant to § 270 of NYDCL, that is, they possessed claims against Keene that would permit them to assert fraudulent causes of action against it. Considering these circumstances, particularly the fact that Keene waived the statute of limitations as to these individuals' claims, the six-year statute of limitations to bring fraudulent conveyance causes of action is tolled as to these individuals.

In short, at least two categories of claimants provide plaintiffs with standing to avoid all the Transactions for both actual and constructive fraud. Accordingly, the motions for summary judgment are denied.

## B. *Motion to Dismiss*

### 1. *Counts I through V, Count VIII (Bairnco only) Rules 9(b) & 12(b)(6)*

When a plaintiff alleges fraud, she or he must state the circumstances constituting the alleged fraud with particularity. Fed. R.Civ.P. 9(b). A defendant must be given sufficient notice of the time, place, and content of the alleged fraud because a defendant would be unable to properly prepare a defense without such notice. *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1127–28 (2d Cir.1994). In addition, plaintiff must allege facts that give rise to a "strong inference of fraudulent intent." *See Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1176 (2d Cir.1993). A plaintiff's complaint may meet the "requisite 'strong inference' of fraud ... either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields,* 25 F.3d at 1128 (citations omitted).

Plaintiffs'. amended complaint in this case alleges sufficient facts to meet Rule 9(b)'s requirements for plaintiffs' fraudulent conveyance causes of action as to all the corporate defendants. Plaintiffs have stated the circumstances constituting the alleged fraud in this case in such a manner as to give all of the corporate defendants sufficient notice of the time, place, and content of the alleged fraud. Indeed, no defendant in this case can successfully argue that it is unable to properly prepare a defense to plaintiffs' allegations. And even if some of the corporate defendants' involvement in the alleged scheme is not as substantial as other defendants' involvement, the amended complaint alleges fraud with sufficient particularity to survive a motion to dismiss pursuant to Rule 9(b).

The corporate defendants' Rule 12(b)(6) argument essentially mirrors their Rule 9(b) argument. They argue that because the amended complaint's "allegations regarding lack of fair consideration and lack of good faith completely fail to satisfy Rule 9(b)'s requirements ... [p]laintiffs have failed to plead the fundamental elements of the fraudulent conveyance claims asserted in Counts I through V, and those claims must be dis-

missed ... for failure to state a claim." (Kaydon Mem. at 19; *see also* Bairnco Mem. at 16–28). Because I hold that 9(b) has been satisfied, there is no basis for granting the corporate defendants' motions to dismiss the fraudulent conveyance causes of action pursuant to Rule 12(b)(6).

Accepting the factual allegations set forth in the amended complaint as true, and drawing all reasonable inferences in favor of plaintiffs, it does not appear beyond doubt that plaintiffs can prove no set of facts in support of their causes of action that would entitle them to relief. Accordingly, the corporate defendants' motions to dismiss Counts I through V and VIII of the amended complaint pursuant to Rule 9(b) and pursuant to Rule 12(b)(6) is hereby denied.

### 2. *Count VI—Spinoff (Kaydon, Genlyte, Bairnco only)*

The amended complaint asserts a fraudulent conveyance cause of action in connection with Bairnco's 1984 spinoff of Kaydon stock to Bairnco's shareholders as well as Bairnco's 1988 spinoff of Genlyte stock. Kaydon, Genlyte, and Bairnco move to dismiss this claim for lack of standing and failure to join their shareholders as indispensable parties.

 A party who is not the transferor, transferee, or beneficiary of an allegedly fraudulent conveyance cannot be held liable for the conveyance under NYDCL. In fact, there is no cause of action under New York law for "mere participation" in an allegedly fraudulent conveyance. *FDIC v. Porco*, 75 N.Y.2d 840, 552 N.Y.S.2d 910, 911, 552 N.E.2d 158 (1990); *see also Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1172 (2d Cir.1993), *cert. denied*, 510 U.S. 945, 114 S.Ct. 385, 126 L.Ed.2d 334 (1993). This principle disposes of this cause of action against Kaydon and Genlyte because plaintiffs have not alleged, nor could they allege, that either corporate entity gave or received anything in these exchanges. Kaydon and Genlyte were neither the transferors, transferees, or beneficiaries of the spinoffs. *See Foufas v. Leventhal*, No. 94 Civ. 7924, 1995 WL 332020, at *2 (S.D.N.Y. June 5, 1995).

Plaintiffs' argument that Kaydon and Genlyte were somehow beneficiaries of these spinoff Transactions lacks merit. In essence, plaintiffs urge the Court to "collapse" all the Transactions in this case, including the spinoffs, and treat them as if they were a single transaction. There is no basis upon which to "collapse" the spinoffs into wholly distinct transactions that took place years earlier and/or later. Accordingly, Count VI of the amended complaint is dismissed as to Kaydon and Genlyte.

 As to Bairnco, however, the motion to dismiss is denied. First, Kaydon and Genlyte's shareholders are not indispensable parties to this claim. Plaintiffs are not required to bring a claim such as this against both the transferor and transferee. Because the shareholders are not parties to this action, plaintiffs will not be entitled to relief against them. If plaintiffs prevail on this claim, however, they will be entitled to relief from Bairnco directly.

 Furthermore, I cannot decide as a matter of law that plaintiffs do not have standing to bring this claim against Bairnco even though only creditors of the transferor are entitled to assert claims under the NYDCL for fraudulent conveyances. Plaintiffs may have a valid cause of action to pierce the corporate veil against Bairnco (*see infra*). If they prevail on that cause of action, Keene's creditors are also Bairnco's creditors, and those creditors have standing to pursue this claim. If plaintiffs' veil piercing cause of action fails for any reason, this claim would have to be dismissed. At this stage, however, Bairnco's motion to dismiss this cause of action is denied.

### 2. *Count VIII—Unlawful Dividends (Bairnco Only)*

Bairnco does not specifically address this cause of action in its moving papers. Rather, Bairnco argues that all the claims against it, apart from the fraudulent conveyance claims, are "infected by the flawed allegations of fraudulent conveyance." (Bairnco Mem. at 28). As already discussed, I hold that plaintiffs' fraudulent conveyance causes of action state a claim upon which relief can be grant-

ed. Accordingly, Bairnco's motion to dismiss this cause of action is denied.

### 3. Count IX—Tort Liability as Successor Corporation

■ Plaintiffs seek to impose liability upon the corporate defendants as successor corporations to Keene based upon two theories: (1) that the corporate defendants were "mere continuations" of Keene; and (2) that Keene's assets were transferred for the fraudulent purpose of escaping liability. (Am.Cmplt.¶¶ 230–37).

■ A "mere continuation" theory of successor liability requires that only the successor "corporation survive[ ] the transaction; the predecessor corporation must be extinguished." *Schumacher v. Richards Shear Co.*, 59 N.Y.2d 239, 464 N.Y.S.2d 437, 440, 451 N.E.2d 195 (1983) (citations omitted); *Diaz v. South Bend Lathe Inc.*, 707 F.Supp. 97, 100 (E.D.N.Y.1989). Keene, the predecessor corporation here, survived all the Transactions at issue. Thus, as a matter of law, this cause of action cannot be pursued based on a "mere continuation" theory.

Whether any of the corporate defendants can be held liable as a successor to Keene, therefore, depends entirely upon plaintiffs' fraudulent conveyances claims.[7] Accordingly, the motions to dismiss this cause of action are denied subject to the limitation that the ability to pursue this claim derives from plaintiffs' ability to pursue its fraudulent conveyance causes of action.

### 4. Count X—Veil Piercing (Bairnco only)

■ Bairnco moves to dismiss this cause of action on the ground that plaintiffs' pleading is insufficient. Bairnco maintains that plaintiffs must allege more than an unduly close relationship between it and Keene; they must allege "that the owners, through their domination, abused the privilege of doing business in the corporate form to perpetrate a wrong or injustice against that party such that a court in equity will intervene." *Morris v. New York State Dep't of Taxation and Finance*, 82 N.Y.2d 135, 603 N.Y.S.2d 807, 811, 623 N.E.2d 1157 (1993) (citation omitted).

■ Under New York law, the corporate veil can be pierced where there has been, among other things, a "failure to adhere to corporate formalities, inadequate capitalization, use of corporate funds for personal purpose, overlap in ownership and directorship, or common use of office space and equipment." *Forum Ins. Co. v. Texarkoma Transp. Co.*, 229 A.D.2d 341, 645 N.Y.S.2d 786, 787 (1st Dep't 1996) (citing *Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc.*, 933 F.2d 131, 139 (2d Cir.1991) (listing twelve factors courts consider in deciding whether to pierce the corporate veil)).

Although plaintiffs do allege a number of the factors that courts consider when deciding whether to pierce the corporate veil (Am. Cmplt. ¶¶ 238–250; Pls. Opp. Ex. B & C), Bairnco argues that the plaintiffs' allegations concerning veil piercing are "too conclusory to pass muster" and do not allege the type of total domination necessary to support the cause of action. (Bairnco Reply at 18; Bairnco Mem. at 28–29). I disagree. Plaintiffs have alleged facts that, when viewed in the light most favorable to them, could entitle them to relief. *See, International Credit Brokerage Co. v. Agapov*, 671 N.Y.S.2d 64, 65 (1st Dep't 1998); *Daniel J. Edelman, Inc. v. Korn*, 231 A.D.2d 405, 646 N.Y.S.2d 811, 812 (1st Dep't 1996); *Dannasch v. Bifulco*, 184 A.D.2d 415, 585 N.Y.S.2d 360, 362 (1st Dep't 1992). Accordingly, Bairnco's motion to dismiss Count IX of the amended complaint is hereby denied.

---

**7.** It should also be noted that plaintiffs allege that, pursuant to CPLR § 214–c(2), this cause of action carries a three year limitations period measured from the date of discovery. Because this cause of action can only be based on plaintiffs' fraudulent conveyance causes of action, plaintiffs cannot assert a limitations period for this claim that is longer than the limitations periods for the fraudulent conveyance claims. *See Cruden v. Bank of New York*, No. 85 Civ. 4170, 1990 WL 251023 at *2 (S.D.N.Y. Dec. 27, 1990), *aff'd in part & rev'd in part on other grounds*, 957 F.2d 961 (2d Cir.1992). Accordingly, plaintiffs' contention that the statute of limitations for this claim is three years from the date of discovery is rejected as a matter of law.

### 5. *Count XIV—RICO*

Plaintiffs allege in their amended complaint that, based on purported acts of mail and wire fraud constituting a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(1), the corporate defendants are liable for violations of 18 U.S.C. §§ 1962(a), (b), (c), and (d). These sections of the United States Code make it unlawful to: (1) use money derived from a pattern of racketeering activity to invest in an enterprise (§ 1962(a)); (2) acquire control of an enterprise through a pattern of racketeering activity (§ 1962(b)); (3) conduct or participate in the affairs of an enterprise through a pattern of racketeering activity (§ 1962(c)); and (4) conspire to violate § 1962(a) through (c) (§ 1962(d)). *See* 18 U.S.C. § 1962(a)-(d).

■■■■ To state a cause of action under RICO, plaintiffs must allege that the defendants (1) through the commission of two or more acts, (2) constituting a "pattern," (3) of "racketeering activity," (4) directly or indirectly invests in, maintains an interest in, or participates in, (5) an "enterprise," (6) the activities of which affect interstate or foreign commerce. *Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). Moreover, where as here a RICO claim sounds in fraud, a plaintiff must plead fraud with particularity. *Wasserman v. Maimonides Med. Ctr.*, 970 F.Supp. 183, 187 (E.D.N.Y.1997) (citing *Ouaknine v. MacFarlane*, 897 F.2d 75, 80 (2d Cir.1990)).

Although the RICO Count of the amended complaint spans nearly 20 pages, the allegations contained in this cause of action are essentially identical to plaintiffs' fraudulent conveyance allegations. Although I have denied defendants' motions to dismiss the fraudulent conveyance claims pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6), there is no basis upon which to impose RICO liability for these allegedly fraudulent conveyances. For the reasons specified below, therefore, this cause of action is dismissed as to each of the corporate defendants. The wholly conclusory allegations of this cause of action, even if accepted as true, simply fail to state a valid RICO claim against any of the corporate defendants. I address each § 1962 claim in turn.

#### a. *Section 1962(a)*

■■■■ To state a claim under § 1962(a), plaintiffs must allege: (1) that the corporate defendants used or invested racketeering income to acquire or maintain an interest in the alleged enterprise; and (2) that the plaintiffs suffered an injury as a result of that investment by the defendants. *R.C.M. Executive Gallery Corp. v. Rols Capital Co.*, 901 F.Supp. 630, 642 (S.D.N.Y.1995) (citation omitted). "The essence of a violation of Section 1962(a) is not a commission of predicate acts but investment of racketeering income." *Ouaknine*, 897 F.2d at 83.

■■■ Plaintiffs' § 1962(a) claim is deficient because it fails to allege the investment of racketeering income. *See Discon, Inc. v. NYNEX Corp.*, 93 F.3d 1055, 1062–63 (2d Cir.1996), *cert. denied*, —— U.S. ——, 118 S.Ct. 49, 139 L.Ed.2d 14 (1997). Plaintiffs' § 1962(a) claim is simply a reiteration of their fraudulent conveyance causes of action. Not surprisingly, therefore, plaintiffs have failed to allege "use or investment injury" that is distinct from the injury resulting from the alleged predicate acts. *Id.* at 1063. The failure to make this allegation is fatal to this claim. Plaintiffs cannot use the fraudulent conveyance causes of action to create a RICO claim where none exists. Accordingly, plaintiffs' § 1962(a) claim is dismissed as to each of the corporate defendants.

#### b. *Section 1962(b)*

■■■■ To state a claim under § 1962(b), plaintiffs must allege that: (1) they suffered an injury; (2) resulting from the acquisition or control of an enterprise; (3) acquired through a pattern of racketeering activity. *First Interregional Advisors Corp. v. Wolff*, 956 F.Supp. 480, 487 (S.D.N.Y.1997) (citation omitted). Like § 1962(a), § 1962(b) requires injury that is distinct from the racketeering activity in question. *Discon*, 93 F.3d at 1062–63. Again, plaintiffs fail to allege distinct injury in this case apart from the alleged fraudulent conveyances themselves. Accordingly, plaintiffs' § 1962(b) claim is dis-

missed as to each of the corporate defendants.

#### c. Section 1962(c)

■ To prevail on a claim pursuant to § 1962(c), plaintiffs must establish that the corporate defendants: (1) conducted or participated in the conduct of (2) an enterprise's affairs (3) through a pattern (4) of racketeering activity (5) that caused injury to plaintiffs' business or property. *Gruntal & Co. v. San Diego Bancorp,* 901 F.Supp. 607, 616 (S.D.N.Y.1995) (citations omitted).

■ Under § 1962(c), the "enterprise" and the "person" must be separate and distinct such that a corporate entity may not be simultaneously the enterprise and the "person" who conducts the affairs of the enterprise through any alleged pattern of racketeering activity. *Discon,* 93 F.3d at 1063; *Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A.,* 30 F.3d 339, 344 (2d Cir.1994); *R.C.M. Executive Gallery Corp.,* 901 F.Supp. at 639.

■ The corporate defendants argue that there is no separation and/or distinction alleged in plaintiffs' amended complaint as to the corporate defendants. Plaintiffs counter by arguing that two different enterprise theories—that Keene is a single corporation enterprise and/or that the association-in-fact enterprise is distinct from it members—salvages their § 1962(c) claim. Plaintiffs' theories fail.

As Bairnco points out in its moving papers, plaintiffs have not alleged that Keene acted independently of Bairnco (or its officers) during the period of the alleged fraud. Indeed, Keene is alleged to have been part of the single corporate consciousness of the corporate RICO defendants. Accordingly, Keene cannot be considered a separate "enterprise." *Discon,* 93 F.3d at 1064. In addition, plaintiffs' association-in-fact enterprise theory is untenable as a matter of law. Cases finding that employees are distinct from a larger corporate "enterprise" of which they are a part do not support the proposition that a parent company like Bairnco operated or managed one of its own subsidiaries as a separate "enterprise" under RICO. The cor-

porate defendants cannot be held liable under § 1962(c) because the facts alleged in the amended complaint fail to show that any of the corporate defendants associated with others to form an enterprise that was "sufficiently distinct from itself." *Riverwoods,* 30 F.3d at 344.

Because the amended complaint does not, and indeed cannot, separate the alleged "enterprise" from the persons that supposedly conducted the pattern of racketeering activity, plaintiffs' § 1962(c) claim as to the corporate defendants fails as a matter of law.

Additionally, it is worth noting that plaintiffs' § 1962(c) claim also fails as to some of the corporate defendants because it fails to allege a pattern of racketeering activity. An essential element of any RICO claim is the existence of a "pattern" of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985). The statute specifically defines a "pattern" of racketeering activity as "at least two acts of racketeering activity ... which occurred within ten years of one another." 18 U.S.C. § 1961(5); *see also Pinnacle Consultants, Ltd. v. Leucadia Nat'l Corp.,* 101 F.3d 900, 904 (2d Cir.1996). To establish a "pattern" of racketeering activity, plaintiffs must allege that each defendant committed two predicate racketeering acts, that the acts are related, and that "they amount to or pose a threat of continued criminal activity." *H.J. Inc. v. Northwestern Bell Tel. Co.,* 492 U.S. 229, 239, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *United States v. Indelicato,* 865 F.2d 1370, 1381–82 (2d Cir.1989); *Beck v. Manufacturers Hanover Trust Co.,* 820 F.2d 46, 51 (2d Cir.1987) (alleged scheme for "one straightforward, short-lived goal" to effect sale of property at reduced price "not sufficiently continuing to constitute an 'enterprise'"), *cert. denied,* 484 U.S. 1005, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

Plaintiffs' allegations against Kaydon, Genlyte, Kasco, Shielding, and Arlon do not meet these standards. To make out a RICO claim against these separate, corporate defendants, plaintiffs cannot simply "lump" all the defendants together and allege that the purported acts of every defendant can be imputed to every other defendant. Nothing in the

amended complaint or moving papers suggests that these separate corporate entities acted together or are responsible for Transactions other than the ones in which they were directly involved.

As to Kaydon, for instance, plaintiffs only identified two purported acts of mail and wire racketeering. The first is a Form 10–K filed on March 27, 1985. The second is a 10–K filed on March 31, 1995. Not only are these acts more than ten years apart, but plaintiffs have not alleged with any particularity that these two racketeering acts are interrelated or that there was any continuity or threat of continuity between them.

As to Genlyte, plaintiffs identified two purported acts of mail and wire racketeering—a 10–K filed on March 17, 1989 and a 10–K filed on March 29, 1995. Even if these two disclosures constitute evidence of racketeering activity, plaintiffs have again failed to allege with any particularity that these racketeering acts were interrelated and that there was continuity between them or a threat of continuity.

As to Kasco, Shielding, and Arlon, the amended complaint fails to identify any actual acts of mail and/or wire racketeering. Indeed, as to these three corporate defendants, the amended complaint is absolutely bereft of any specific RICO allegation.

For all these reasons, the § 1962(c) claim is hereby dismissed as to all the corporate defendants.

#### d. Section 1962(d)

Because plaintiffs' other § 1962 claims fail, the allegations in the amended complaint cannot form the basis for a RICO conspiracy claim pursuant to § 1962(d). *Discon*, 93 F.3d at 1064; *Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 25 (2d Cir.1990). Even assuming plaintiffs had presented viable claims under §§ 1962(a), (b), or (c), this claim would still fail. To state a RICO conspiracy claim, plaintiffs must allege an agreement to commit two or more predicate acts. *Brooke v. Schlesinger*, 898

F.Supp. 1076, 1085 (S.D.N.Y.1995) (citations omitted).

The amended complaint, although it discusses the allegedly fraudulent transfers in detail, fails to allege an agreement among these defendants to join the conspiracy and/or that the alleged co-conspirators knowingly participated in the conspiracy. Plaintiffs have not alleged any specific acts in furtherance of the purported conspiracy, nor have they provided a factual basis for the conclusory allegations that the purportedly fraudulent transfers constituted a conspiracy by and among the corporate defendants in violation of § 1962(d). This failure is particularly compelling as to defendants Kaydon, Genlyte, Kasco, Shielding, and Arlon. Even as to Bairnco, however, the allegations are inadequate to state a claim. Accordingly, the § 1962(d) claim against the corporate defendants is dismissed.

#### e. Permission to Replead

In a conference on April 3, 1998, plaintiffs urged me to permit them to amend their complaint a second time to replead this RICO cause of action. Given the timing, and the fact that the majority of the motions to dismiss in the case were still pending, I denied their request. Having now decided the corporate defendants' motions [8] as well as having reviewed the extensive record in this case, I will deny any further application by plaintiffs to replead this cause of action.

### CONCLUSION

For the reasons stated herein, the corporate defendants' motions for summary judgment are hereby denied and the motions to dismiss are hereby granted in part and denied in part. The stay of discovery is hereby lifted.

SO ORDERED.

---

**8.** Although I do not here decide the individual defendants' motions to dismiss, I will grant their motion to dismiss Count XIV for the same reasons I have granted the corporate defendants' motions to dismiss that count.