Richard A. **LIPPE,** Archie R. **Dykes,** and John J. **Robbins,** as Trustees for Keene Creditors Trust, Plaintiffs,

v.

**BAIRNCO CORPORATION, et al., Defendants.**

No. 96 Civ. 7600(DC).

United States District Court, S.D. New York.

Jan. 5, 1999.

Levy Phillips & Konigsberg, LLP, by Stanley J. Levy, New York City, Budd Larner Gross Rosenbaum Greenberg & Sade, P.C., by David R. Gross, Short Hills, New Jersey, for Plaintiffs.

Schulte Roth & Zabel, LLP, by Irwin Sugarman, Thomas R. Fallati, New York City, for Defendant Kaydon Corporation.

Debevoise & Plimpton, by John H. Hall, R. Townsend Davis, Jr., Jeremy Feigelson, Andrew K. Glenn, New York City, for Defendants Bairnco Corporation, Arlon Inc., Kasco Corporation, and Shielding Systems Corporation.

McCarter & English, by Andrew T. Berry, New York City, for the Genlyte Group Inc.

## MEMORANDUM DECISION

CHIN, District Judge.

Defendant Kaydon Corporation ("Kaydon") moves for reargument of its motion for summary judgment, which I granted in part and denied in part as set forth in my Opinion dated October 13, 1998. *See Lippe v. Bairnco Corp.*, 225 B.R. 846 (S.D.N.Y.1998). Alternatively, Kaydon seeks an order pursuant to 28 U.S.C. § 1292(b) certifying certain of my rulings for interlocutory appeal to the Second Circuit.[1]

For the reasons that follow, the motion for reargument is granted in part and denied in part. The alternative request for an order certifying an interlocutory appeal is denied.

### 1. *Inactive Docket/Pleural Registry Claimants*

In my October 13th Opinion, I held that the statute of limitations had been tolled as to "inactive docket and pleural registry claimants." These were claimants who had filed lawsuits against Keene Corporation ("Keene") and other asbestos manufacturers, before any asbestos-related injuries had been manifested, to protect themselves from the running of the statute of limitations. Because these claims were "premature," courts established registries and/or inactive dockets whereby plaintiffs could file claims that remained inactive, but reserving the right to reactivate the claims if the injuries later manifested themselves.

These registries were established in Massachusetts, Connecticut, and several other states. In these cases, Keene and other asbestos manufacturing and/or distributing defendants stipulated to a voluntary dismissal of some of these lawsuits so that they could be placed on an inactive docket, and Keene and these other defendants entered into agreements tolling the statute of limitations. I held in my October 13th Opinion that the statute of limitations had been tolled as to these creditors by virtue of these tolling agreements.

On this motion for reargument, Kaydon points out that it was not a party to any of these tolling agreements or to any of these lawsuits and that these agreements did not address fraudulent conveyance claims against those (such as Kaydon) who did not sign the agreements. Consequently, Kaydon argues, it cannot be bound by these tolling agreements.

Plaintiffs do not contest these facts, and in their opposition to the motion for reargument, plaintiffs essentially concede the correctness of Kaydon's arguments in this respect by ignoring them. Instead, plaintiffs argue that Kaydon and Bairnco (and others) are successors in interest to Keene and that they therefore are bound by the tolling agreements as Keene's successors in interest.

As Kaydon points out, however, at best (from plaintiffs' perspective) Kaydon, Bairnco, and others are successors in interest to Keene for its tort liabilities. Even if Kaydon and Bairnco were successors in interest to Keene and responsible for Keene's liability for tort claims for asbestos-related injuries, the fraudulent conveyance claims are a different matter. As the transferor, Keene would not be a proper defendant in a fraudulent conveyance claim under New York's Debtor and Creditor Law (the "NYDCL"), which lies only against the transferees and beneficiaries of the challenged conveyances. *See Stochastic Decisions, Inc. v. DiDomenico*, 995 F.2d 1158, 1172 (2d Cir.) (N.Y.DCL "provide[s] a creditor's remedy for money damages against parties who participate in the fraudulent transfer of a debtor's property and are transferees of the assets and beneficiaries of the conveyance") (citing *Federal Deposit Ins. Corp. v. Porco*, 75 N.Y.2d 840, 552 N.Y.S.2d 910, 911–12, 552 N.E.2d 158 (N.Y.1990)), *cert. denied*, 510 U.S. 945, 114 S.Ct. 385, 126 L.Ed.2d 334 (1993). Hence, Kaydon and Bairnco could not be a successor in interest to Keene for purposes of a fraudulent conveyance claim.

Accordingly, this aspect of Kaydon's motion for reargument is granted. Upon reconsideration, defendants' motion for summary

---

1. Defendants Bairnco Corporation, Arlon Inc., Kasco Corporation, Shielding Systems Corporation, and The Genlyte Group Inc. also previously moved for summary judgment and join in Kaydon's motion for reargument.

judgment is granted with respect to the category of inactive docket and pleural registry claimants. Plaintiffs may not rely on this category of claimants.

## 2. *Recently Diagnosed Claimants*

Kaydon also seeks reargument on the basis that I incorrectly held that plaintiffs could rely on the category of individuals recently diagnosed with asbestos-related diseases to provide them with standing to attack the transactions in question on the basis of actual fraud. This aspect of the motion for reargument is denied.

■ In its reargument papers, Kaydon writes that "[t]he Court apparently considers the issue of whether the statute of limitations on the Recently Diagnosed Claimants' fraudulent conveyance claims began to run upon notice of the fraud or discovery of their injuries to be one of first impression in New York." (Kaydon Reargument Mem. at 16). Kaydon is incorrect. I did not consider this to be an issue of first impression, nor was I applying the doctrine of equitable tolling, nor was I trying to re-write New York law, as Kaydon suggests. Rather, I was merely applying the two-year discovery rule and the settled principle under New York law that "[t]he statute of limitations will not bar an action unless it conclusively appears that the plaintiff had knowledge of facts from which the alleged fraud might be reasonably inferred." *Juman v. Louise Wise Servs.*, 174 Misc.2d 49, 663 N.Y.S.2d 483, 487 (N.Y.Sup. Ct.1997) (citation omitted), *aff'd as modified*, 678 N.Y.S.2d 611 (1st Dep't 1998).

■ The issue is whether persons recently diagnosed with asbestos-related diseases had knowledge of facts prior to December 3, 1991 (which was two years prior to the filing by Keene of its bankruptcy petition) from which they could reasonably infer that they had been defrauded by the alleged fraudulent conveyances. Kaydon argues that the matters relating to the transactions in question were fully disclosed by 1990 at the latest, and that any and all prospective plaintiffs were on constructive notice then of any alleged fraud, citing *Cruden v. Bank of New York*, 957 F.2d 961 (2d Cir.1992).

I carefully considered Kaydon's arguments before rejecting them in my October 13th Opinion, and I have reconsidered its arguments on this motion for reargument. I remain unpersuaded. If anything, upon further consideration, I am even more convinced that Kaydon has misread *Cruden*.

In *Cruden*, the plaintiffs were debenture holders who had been sent letters and notices about the terms of a transaction they later attacked as fraudulent. The Second Circuit held that the statute of limitations applicable to the plaintiffs' fraud claims was "the longer of either six years from when the cause of action accrued or two years from the time plaintiff[s] discovered the fraud or could have with reasonable diligence discovered it." 957 F.2d at 973 (citing N.Y. C.P.L.R. §§ 203(f), 213(8) (McKinney 1991)). The Court noted that the record contained "overwhelming evidence that all plaintiffs knew of the alleged fraud more than two years prior to filing suit." *Id.* at 974. Hence, the plaintiffs could not rely on the two year discovery rule and instead they had to rely on the six-year accrual rule: they argued that because they were not actually injured by the fraud until the defendants defaulted on payments due under the debentures, their cause of action for fraud did not accrue—and the statute of limitations did not begin to run—until the losses were suffered.

The Second Circuit rejected the argument, holding that the plaintiffs' cause of action for fraud accrued when they could sue for "appropriate legal or equitable relief," even though the debentures had not matured. *Id.* As the Court held, "[a] debenture holder is not required to stand by helplessly until a distant maturity date arrives while his debtor is fraudulently depleted of all its assets." *Id.* It was in this context, and not the context of the two-year discovery rule, that the Second Circuit held that the date of loss was not the key:

> The alternative six-year period begins to run not upon a plaintiff's having suffered an 'injury' as that term seems to be used by plaintiffs, but when a plaintiff suffers a loss as a result of the defendant's fraudulent act.... One suffers a 'loss' so as to trigger this six-year period 'when a plain-

tiff with assumed knowledge of the fraudulent wrong may assert a claim for relief.'

*Id.* (quoting *Stull v. Bayard*, 561 F.2d 429, 432 (2d Cir.1977), *cert. denied*, 434 U.S. 1035, 98 S.Ct. 769, 54 L.Ed.2d 783 (1978)).

Here, plaintiffs are relying not on the six-year accrual rule but on the two-year discovery rule. The question is not when the fraud claim accrued but when plaintiffs, through the exercise of reasonable diligence, should have discovered the fraud. Unlike the plaintiff debenture holders in *Cruden*, who knew their holdings were being affected by the challenged transactions, here the individuals in question were only recently diagnosed as having asbestos-related injuries; they had no reason to know years earlier that they had been defrauded by transactions to which they were not a party and in which they had no conceivable interest, at a time when they had no knowledge (actual or constructive) that they had suffered any injury. Indeed, if these individuals had sued to challenge the transactions on the basis of underlying personal injury actions at a time when they could not even allege that they had suffered any injury, defendants would have argued that they lacked standing. Thus, at minimum, there exists an issue of fact as to whether these recently diagnosed individuals had constructive notice of the alleged fraud prior to December 3, 1991.

Accordingly, this prong of the motion for reargument is denied.

### 3. *Section 273–a*

In my October 13th Opinion, I concluded that there were issues of fact concerning the existence of a viable judgment creditor with standing to pursue a NYDCL § 273–a claim.[2] I did so, however, summarily. Indeed, I did not reach the issue of whether the existence of one creditor with a timely claim under § 273–a would permit plaintiffs to void an entire conveyance. In view of my ruling above with respect to inactive docket and pleural registry claimants, I address these matters more fully now.

### A. *The Existence of Judgment Creditors*

Plaintiffs identified, in a July 15, 1997 response to Kaydon's interrogatories, ten wholly unbonded and 23 partially unbonded purported asbestos judgment creditors that plaintiffs allege provide them with standing to bring a NYDCL § 273–a cause of action against all the corporate defendants. The earliest wholly unbonded judgment creditors, Ulmer and Belsh, filed suit against Keene prior to the Kaydon Transaction. (*See* Fitzpatrick Aff. Ex. H (ex. 5)). Other purported unbonded judgment claimants filed suit against Keene prior to December 3, 1987. (*Id.*).

The partially unbonded judgment creditors are persons that are alleged to be holders of judgments that were bonded for the full judgment amount, but where the amount of the bond was not sufficient to cover the interest that had accrued prior to the time that Keene filed for bankruptcy. Of the 23 partially unbonded judgment creditors, the oldest claim is the Deutsch claim, which dates back to April 1982. (*Id.* Ex. H (ex. 12.D)). Several of the other partially unbonded judgment creditors also filed claims pre-dating the Kaydon Transaction. Finally, plaintiffs identify 144 asbestos victim claimants who purportedly settled with Keene but were never paid. (*Id.* Ex. H (ex. 8.A–D)). Of these 144 claims, the earliest is the Cyzio claim filed in November 1983. (*Id.*).

To prevail on a § 273–a fraudulent conveyance claim, a plaintiff must prove that: (1) the conveyance in question was made without fair consideration; (2) at the time of the transfer, the transferor was a defendant in an action for money damages or a judgment had been docketed against the transferor; and (3) a final judgment has been rendered against the transferor that remains unsatisfied. *See Hassett v. Goetzmann*, 217 B.R. 9, 20 (N.D.N.Y.1998) (citing *In re Fair*, 142 B.R. 628, 631 (Bankr.E.D.N.Y.1992)); *Taylor–Outten v. Taylor*, 248 A.D.2d 934, 670 N.Y.S.2d 295, 296 (4th Dep't 1998). If a

---

**2.** The October 13th Opinion incorrectly refers to the Belsh judgment as the "Belmer" judgment.

225 B.R. at 854. It should be "Belsh."

judgment has been satisfied, it cannot be the basis of a claim under § 273-a. *Taylor–Outten*, 670 N.Y.S.2d at 296.

■ In my October 13th Opinion, I noted that plaintiffs had presented evidence from which a reasonable factfinder could conclude that the Belsh claim (which apparently was filed on February 16, 1983 (*see* Fitzpatrick Aff. Ex. H (ex. 5))) resulted in a final judgment that remains unpaid. For example, plaintiffs produced the following documentation to show that a judgment was entered in Belsh that remains unpaid: (1) the complaint; (2) answers by Belsh to interrogatories; (3) the trial judge's 3/9/93 post trial Order entering judgment against Keene; (4) the trial judge's 10/19/93 order denying Keene's post-trial motions; and (5) a 2/2/94 order dismissing Keene's appeal due to the bankruptcy stay, without prejudice to reinstatement following conclusion of the bankruptcy proceedings. (Fitzpatrick Aff. ¶ 42). Defendants produced no evidence of payment, and the fact that the appeal was dismissed as a result of the bankruptcy suggests the judgment was never paid. Accordingly, the Belsh claim does provide plaintiffs with standing to assert a § 273-a claim in this case.

In my October 13th Opinion, I noted that "[t]he majority of claimants identified as judgment creditors by plaintiffs fail to meet § 273-a requirements as a matter of law." 225 B.R. at 854 n. 6. I explain more fully my reasoning as follows:

### Ulmer

■ The Ulmer claim, filed prior to 1983, resulted in a jury verdict against Keene that was never reduced to judgment. Because § 273-a clearly requires a "final judgment," Ulmer is not an actual unsecured creditor with standing pursuant to § 273-a.

### Greitzer & Locks

■ The "Greitzer & Locks" claimants, a group of asbestos personal injury victims represented by the Greitzer & Locks law firm in Pennsylvania, filed lawsuits against Keene prior to the Kaydon transfer and obtained final judgments against Keene. After Keene filed for bankruptcy, it reached an agreement with these claimants to settle their claims. Keene and the claimants agreed, however, to leave $2,500 of the judgment unpaid and unsecured so that plaintiffs could pursue a § 273-a claim against the corporate defendants "unencumbered" by any statute of limitations defense. (Pls. Summ. Judg. Opp. at 198–99).

The Greitzer & Locks claimants do not provide plaintiffs with standing to attack the transactions in question. Section 544(b) of the Bankruptcy Code (the "Code") and the NYDCL were not designed to protect artificially created creditors. It offends public policy and defies logic that an artificially created $2,500 creditor can arguably provide plaintiffs with the ability to pursue causes of action for nearly a billion dollars in relief. Indeed, plaintiffs provide no legal support as to the propriety of literally creating judgment creditors so that plaintiffs can pursue otherwise untimely fraudulent transfer claims. I conclude, as a matter of law, that plaintiffs are not entitled to use this settlement to provide them with standing pursuant to § 544(b) and relevant state law. Because this arrangement was concededly contrived, these claimants are not "actual" unsecured creditors.

### Claimants Who Settled But Were Not Paid

■ Plaintiffs also rely on certain claimants who purportedly settled claims with Keene but were never paid. These claimants do not provide plaintiffs with standing under § 273-a because a "settlement" is not a "final judgment" unless it is reduced to a judgment. Plaintiffs do not allege that any of these unpaid settlements were reduced to such a judgment. They have failed, therefore, to demonstrate that a triable issue of fact exists as to these claimants because there is no evidence that any of the claimants in this group held final judgments against Keene that remain unpaid.

Plaintiffs contend that "while the formalities may differ somewhat," settlements reached as part of the judicial process establish an "uncontested right to recovery" because the results are similar for § 273-a purposes "since an active litigation is replaced by a confirmed debt." Both process-

es, plaintiffs maintain, "should be accorded comparable treatment regarding the statute of limitations." (Pls. Summ. Judg. Opp. at 196–97). Plaintiffs provide no legal support for the proposition that a settlement should be treated as a final judgment for purposes of § 273–a. Indeed, this proposition directly contradicts the clear language of § 273–a and I reject it as a matter of law. Accordingly, claimants who settled with Keene but were not paid and who did not obtain "final judgments" do not provide plaintiffs with standing to avoid any of the transactions in question in this lawsuit pursuant to § 273–a.

### Deutsch

▮▮▮ Deutsch is another partially unbonded judgment creditor whose claim was filed in 1982 (*see* Fitzpatrick Aff. Ex. H (ex. 12.D)) prior to the Kaydon Transaction, and who obtained a final judgment against Keene in 1991, according to plaintiffs. (Pls. Summ. Judg. Opp. at 197). Kaydon argues that this creditor could not assert a § 273–a claim until 1991 when a final judgment was actually entered. This interpretation of § 544(b) and § 273–a, however, is incorrect.[3] Keene was a defendant in an action at the time of transfer and, if plaintiffs' allegations are true, a final judgment was later obtained that remains unsatisfied. Plaintiff have now provided a copy of a judgment in Deutsch filed on October 4, 1991 in the amount of $71,088.92, and there appears to be no dispute that this judgment has not been paid. At this juncture, at minimum questions of fact exist as to whether the Deutsch claim provides plaintiffs with standing under § 273–a.

Plaintiffs rely on numerous other purported judgment creditors. I cannot address them all now, but I hold that summary judgment must be denied as to the existence of at least two judgment creditors: Belsh and Deutsch.

### B. Standing Under § 273–a To Attack Other Types of Fraudulent Conveyances

Assuming at least one actual § 273–a creditor exists, the question remains whether the existence of such a creditor provides plaintiffs with standing to assert other fraudulent conveyances claims under the NYDCL, or whether the relief plaintiffs can obtain on behalf of a § 273–a creditor is limited to the precise amount necessary to satisfy the judgment of that creditor.

▮▮▮ I hold that the existence of a § 273–a creditor does not give plaintiffs standing to assert other fraudulent conveyance claims under the NYDCL. I hold also that the relief to which a § 273–a creditor is entitled is limited to the amount necessary to satisfy the creditor's judgment. I reach these conclusions for at least four reasons.

First, the language in § 273–a is significantly different from the language in the other sections of the NYDCL. Section 273, for example, provides that "[e]very conveyance is fraudulent *as to creditors* . . . ." NYDCL § 273 (emphasis added). Section 274 similarly provides that transfers are "fraudulent as to *creditors* and as to *other persons* who become creditors." NYDCL § 274 (emphasis added). Sections 275 and 276 contain similar general language. Section 273–a, however, is much more limited. It provides:

> Every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such an action has been docketed against him, *is fraudulent as to the plaintiff in that action* without regard to the actual intent of the defendant if, after final judgment for the plaintiff, the defendant fails to satisfy the judgment.

Hence, plaintiffs do not have to demonstrate that a creditor held a final judgment prior to any of the transactions to attack those transactions pursuant to § 273–a and under § 544(b) of the Code. All that § 273–a requires is that there was an action for money damages pending against the transferor at the time of the conveyance, which eventually resulted in a final judgment that remains unsatisfied.

---

**3.** Plaintiffs must show that, at the time of the transactions in question, there was in fact a creditor in existence "holding an allowed unsecured claim . . . . [but the creditor] need not have reduced his claim to a lien or judgment." *In re Wingspread,* 178 B.R. 938, 945 (Bankr.S.D.N.Y. 1995) (citations omitted). Moreover, § 273–a applies to conveyances that "occurred before, during and after a judgment." *Petersen v. Vallenzano,* 849 F.Supp. 228, 233 (S.D.N.Y.1994).

NYDCL § 273–a (emphasis added). Hence, § 273–a expressly voids a transfer "as to the plaintiff," not as to creditors generally.

Second, an essential element of a § 273–a claim is the existence of an unsatisfied judgment. Once a judgment is satisfied, a cause of action under § 273–a no longer exists. It makes no sense, therefore, that a claim under § 273–a would permit recovery beyond that necessary to satisfy the judgment.

Third, the statute of limitations for a § 273–a cause of action is longer than the statute of limitations for the other causes of action under the NYDCL. *See* 225 B.R. at 852–53. It would make no sense to permit plaintiffs to use a § 273–a creditor with a timely claim to circumvent the statutes of limitation for untimely causes of action.

Finally, the rights of a trustee under § 544(b) to avoid a transaction are limited to the rights of an actual creditor under applicable nonbankruptcy law. *See* 225 B.R. at 851–52. Here, plaintiffs' rights as trustees under §§ 544(b) and 273–a are limited to the rights of an actual plaintiff/judgment creditor under § 273–a. Those rights would encompass voiding a conveyance "as to the plaintiff," to the extent necessary to satisfy the judgment.

Accordingly, even if plaintiffs prove the existence of an actual § 273–a creditor, that creditor would permit plaintiffs to assert a § 273–a cause of action only, that is, only Count III of the amended complaint and not plaintiffs' other fraudulent conveyance causes of action. In addition, plaintiffs would be entitled only to the relief necessary to satisfy the particular judgment.

#### 4. *Section 1292(b)*

Kaydon's request for certification of an interlocutory appeal pursuant to § 1292(b) is denied.

### CONCLUSION

The motion for reargument is denied in part and granted in part, as set forth above. The alternative request for § 1292(b) certification is denied. Plaintiffs' request that the Court permit them to reargue whether certain categories of claimants toll the running of the statute of limitations (*see* Pls. Reconsideration Opp. at 23) is denied.

SO ORDERED.