**Jeffrey B. SKLAROFF, as Receiver, Plaintiff,**

v.

**Abraham ROSENBERG, Isaac Rosenberg, Rose Castle Corp. and Franklin Realty Corp., Defendants.**

**No. 98CIV.0487 (BDP).**

United States District Court, S.D. New York.

Dec. 18, 2000.

Jeffrey B. Sklaroff, Alan Mansfield, Greenberg Traurig Hoffman Lipoff Rosen & Quentel, New York City, for Plaintiff.

Robert W. Cinque, Law Offices of Cinque & Cinque, P.C., New York City, for Defendants.

## MEMORANDUM DECISION AND ORDER

PARKER, District Judge.

Plaintiff, Jeffrey B. Sklaroff, acting as Receiver in *Donna Lee H. Williams, Insurance Commissioner of the State of Delaware v. LPDA Acquisition Corp, et al.*, 96 Civ. 3079(BDP), seeks to recover from defendants monies due pursuant to a written guarantee of payment executed by them as partial collateral security for the repayment of a loan. Plaintiff moves for summary judgment. For the reasons stated herein, the motion is granted.

### FACTS

In March 1991, National Heritage Life Insurance Company ("NHL") lent $4.3 million to Franklin Realty Corp ("Franklin Realty"). The loan was secured by a mortgage on property owned by Franklin Realty. The defendants, Abraham and Isaac Rosenberg, were the sole shareholders and officers of Franklin Realty. The Rosenbergs, along with another one of

their companies, Rose Castle Corp., executed a broad personal guarantee in which they, among other things, "absolutely and unconditionally" guaranteed the repayment of the loan to NHL. Specifically, in entering the guarantee, the defendants further agreed that even if NHL released the collateral securing Franklin Realty's debt, they would remain liable under the guarantee to repay the money lent them by NHL. The guarantee provides in part as follows:

> [the guarantors] hereby consent that from time to time, before or after any default by the borrower ... with or without further notice to or assent from [the guarantors], any security at any time held by or available to [NHL] for any obligation of the Borrower ... may be exchanged, surrendered or released and any obligation of the Borrower ... may be changed, altered, renewed, extended, continued, surrendered, compromised, waived or released in whole or in part ... and the [guarantors] shall remain bound under this guaranty notwithstanding any such exchange, surrender, release, change, alteration, renewal, extension, continuance, compromise, waiver, inaction, extension of further credit or other dealing.

Guarantee at 2.

In April 1992, NHL entered into a Participation Agreement with LPDA Acquisition Corp., a New York corporation that was owned and controlled by Lyle Pfeffer and Michael Blutrich. Under the Participation Agreement NHL assigned to LPDA a 65% interest in seven mortgages including the Franklin Realty mortgage and also authorized LPDA to administer the mortgages.

Beginning in the spring of 1994 it started to become apparent that the transaction involving Pfeffer and Blutrich, of which the Participation Agreement was the centerpiece, was a massive fraud on NHL resulting in tens of millions of dollars in losses. In April 1994, the Insurance Commissioner entered an Order of Supervision over NHL under Delaware law. Under the Order of Supervision, NHL was barred from transferring any of its property and undertaking any action which could result in reducing the net worth of NHL without the prior consent of the Commissioner.

The next month, on May 24, 1994, a Rehabilitation and Injunction Order was entered by the Delaware Court of Chancery on the application of the Insurance Commissioner. Under that order, the Commissioner was directed to take possession and control of NHL's assets. In addition, that order vested the Commissioner with title to all NHL property. In November 1995, the Delaware Chancery Court entered a Liquidation and Injunction Order. Under the Liquidation Order, the Commissioner was directed to maintain, and control the property and assets of NHL and succeed to its title to and interest in all NHL's property. These various orders furthered the broad remedial purpose of protecting and preserving the assets of NHL for the benefit of its policy holders.

On May 30, 1996, the LPDA action was filed in this Court. *See Donna Lee H. Williams, et al. v. LPDA Acquisition Corp., et al.*, 96 Civ. 3079(BDP). In that action, the Insurance Commissioner sought rescission, the setting aside of fraudulent conveyances, money damages, as well as equitable relief, including an order setting aside the Participation Agreement as fraudulent.[1]

Many months after the Insurance Commissioner took control of NHL, the defendants, Abraham and Isaac Rosenberg, paid

---

1.  Pfeffer and Blutrich initially challenged this Court's jurisdiction on the ground that a document purportedly by part of the Participation Agreement contained an arbitration clause requiring the parties to arbitrate the claims asserted by the Commissioner rather than litigate them in this Court. During the course of monitoring a Title III interception in a criminal matter, the government captured a conversation indicating that the arbitration agreement tendered to this Court had been forged.

$855,000 in July 1996 to an entity owned and controlled by Pfeffer and Blutrich called NuLenda Inc. In return, the Rosenbergs received from LPDA a Satisfaction of Mortgage, a transaction defendants claim extinguished the $4,300,000 mortgage since the $885,000 was, they claim, fair consideration. The Satisfaction was dated July 26, 1996.

Once it became apparent that the Participation Agreement was the principal vehicle by which NHL was being looted, the Insurance Commissioner moved on June 21, 1996, on notice to LPDA, Pfeffer and Blutrich, for the appointment of a Temporary Receiver. In November 1996, Sklaroff was appointed Temporary Receiver by order of this Court. The order directs the Receiver to take possession of numerous mortgages, including the Franklin Realty Mortgage at issue in this action, and institute and carry on all legal proceedings for the protection of the mortgages, including legal proceedings, such legal proceedings as might be necessary to recover possession of the mortgages or property.

At the same time, the activities of Pfeffer, Blutrich, Isaac and Abraham Rosenberg, Franklin Realty, NuLenda Corporation and other individuals and entities were the subject of a large scale criminal investigation by the Federal Bureau of Investigation and the United States Attorney's Office for the Middle District of Florida. Blutrich, Pfeffer, Isaac Rosenberg and others were indicted. *See United States v. Lyle Pfeffer,* Case No. 97–71–Cr.–Ov, (22 C S2); *See United States v. Michael Blutrich,* Case No. 97–71–Cr.–Ov–22(S2).

In April 1998, Pfeffer and Blutrich executed plea agreements with the United States Attorney's Office for the Middle District of Florida. They plead guilty to approximately 18 felony counts, including RICO, and RICO conspiracy charges arising from the massive fraud they perpetuated on NHL, including criminal charges relating to the negotiation and performance of the Participation Agreement and involving their dealings with Abraham and Isaac Rosenberg. Two months later in June 1998, Pfeffer, Blutrich and LPDA executed a Consent Order and Judgment in which they consented to the entry of judgment in the LPDA's actions in amounts ranging from $660,000 to $100,-000,000. Under the terms of the consent judgment, the Participation Agreement was rescinded and rendered void, *ab initio,* and Pfeffer, Blutrich and LPDA consented to and accepted as findings of fact the allegations made by the Insurance Commissioner in the LPDA action. Pfeffer and Blutrich became cooperating government witnesses in *United States v. John Gotti, Jr.,* 99 Cr. 42(BDP).

Isaac Rosenberg was also indicted in the Middle District of Florida for bankruptcy fraud arising from his dealings with NHL. There, in return for the government's agreement to dismiss more serious charges against him, including a pending RICO conspiracy charge, Isaac Rosenberg plead guilty to committing bankruptcy fraud in violation of Title 18, United States Code, § 152 by filing false proofs of claim in a bankruptcy proceeding pending in the United States Bankruptcy Court for the Eastern District of New York. In the criminal proceeding against him, Rosenberg allocuted that he had falsely sworn in court filings that NHL was a creditor in the bankruptcy case and the filing was a means of permitting the Rosenbergs to use NHL money to acquire collateral from a secured creditor. Specifically, Isaac Rosenberg allocuted as follows:

## INTRODUCTION

a. At all times material herein, ISACK ROSENBERG and his brother Abraham (collectively the "Rosenbergs"), New York businessmen, owned a number of corporations, including Certified Lumber, Inc., Boro Park, Inc., Franklin Realty Inc., and Rose Castle Corp.

b. On or about March 5, 1991, National Heritage Life Insurance Company (NHLIC), Orlando, Florida, issued a $4,300,000 loan to Franklin Realty, Inc., secured by real property of Franklin Realty, Inc., and by a guarantee from rose Castle Corp., and personal guarantees of the Rosenbergs.

c. On or about March 6, 1991, Howard Savings Bank ("HSB") issued a $4,000,000 loan to Certified Lumber, and $2,500,000 loans to ISACK ROSENBERG and his brother Abraham (collectively the "Rosenbergs"). To secure these loans, Certified Lumber and the Rosenbergs gave guarantees, pledged the inventory and assets of Certified Lumber and of Boro Park, gave a $2,500,000 mortgage on the real property on which Certified Lumber was located, and gave a $500,000 mortgage on the real property on which Boro Park was located. The assets of HSB, including these debts and mortgages were ultimately acquired by First Fidelity Bank ("FFB") (HSB and FFB as successor to HSB hereinafter collectively referred to as "HSB/FFB"). Franklin Realty, Inc. did not provide a guarantee of any of the HSB loans to Certified Lumber.

d. On or about June 3, 1992, Certified Lumber and Boro Park filed Petitions under Chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Eastern District of New York, Brooklyn, New York, which were procedurally consolidated (the "CL/BP Bankruptcy").

### FALSE DECLARATIONS IN BANKRUPTCY

e. On or about June 17, 1992, and again on or about July 31, 1992,

### ISACK ROSENBERG

The defendant herein, caused a false and fraudulent document, that is, an unsworn statement made under penalty of perjury to be filed in the CL/BP Bankruptcy, Eastern District of New York, a case under Chapter 11 of the Bankruptcy Code.

f. Specifically, on or about June 17, 1992, and again on or about July 31, 1992, ISACK ROSENBERG, in relation to a case under Chapter 11 of the Bankruptcy Code, made false and fraudulent unsworn declarations under penalty of perjury which listed NHLIC as an unsecured creditor in documents filed in the CL/BP Bankruptcy. Specifically, ISACK ROSENBERG falsely stated that NHLIC was a creditor holding a $4,300,000 unsecured claim pursuant to an unspecified "Guarantee," whereas Certified Lumber never gave such a guarantee to NHLIC, and no such guarantee had ever been recorded.

g. On or about September 25, 1992, HSB settled the $4,000,000 loan to Certified Lumber for $1,200,000. On or about November 2, 1993, FFB settled the remaining claims for $1,150,000. The settlements were for the fair market value of the collateral securing said loans. Accordingly, HSB/FFB did not suffer any loss as a result of the above-described attempted bankruptcy fraud.

In October 1999, the Receiver commenced this action seeking judgment based on the personal guarantees and seeking to set aside the July 1996 Satisfaction on the ground that it constituted a fraudulent conveyance.

### DISCUSSION

Summary judgment is granted only if "there is no genuine issue as to any material fact and … the moving party is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(c). On a motion for summary judgment, "all ambiguities and inferences to be drawn from the underlying facts should be resolved in favor of the party opposing the motion, and all doubts as to the existence of a genuine issue for trial should be resolved against the moving party." *Brady v. Town of Colchester,* 863 F.2d 205, 210 (2d Cir.1988) (*citing Celotex Corp. v. Catrett,* 477, U.S. 317, 330 n. 2, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

The mere existence of an alleged factual dispute between the parties will not defeat a motion for summary judgment. *Terry v. United States,* No. 98 Civ. 8249(NRB), 2000 WL 204522, at *3 (S.D.N.Y. Feb. 18, 2000). Rather, the non-moving party must affirmatively set forth facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 246, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute about a material fact is "genuine ... if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505.

■ In order to recover on its guarantee, the Receiver must establish the following elements: "(1) the plaintiff is owed a debt from a third party; (2) the defendant made a guarantee of the payment of the debt; (3) the debt has not been paid by either third party or the defendant." *Chemical Bank v. Haseotes,* 13 F.3d 569, 573, (2d Cir.1994).

■ The only real dispute over the existence of these three elements is defendants' contention that the Guarantee was extinguished as a consequence of the Satisfaction of Mortgage delivered by LPDA in July 1996 to NuLenda.[2]

This contention does not establish a defense to the Guarantee for two reasons. First, the text of the Guarantee bars the

contention. Secondly, assuming the transaction occurred, it was a fraudulent conveyance under New York law. *See* New York Debtor and Creditor's Law §§ 273, 273–a.

The parties to the Guarantee in their writing, contemplated that the collateral, i.e., the mortgages, might be, for whatever reason, exchanged, surrendered or released. Nevertheless, the Guarantee provided that, in the event such things happen, the guarantors would still be bound to repay NHL the outstanding loan amount evidenced by the Note. In other words, in entering the guarantee, the defendants agreed that they would "absolutely and unconditionally" guarantee payment of Franklin's obligations to NHL on the Note. They further agreed that the Guarantee would continue to obligate them, even if NHL released the collateral securing Franklin's debt.

Nothing in the Satisfaction of Mortgage suggests that it had the effect of terminating the obligations created by the broad personal guarantees. Since the parties to the transaction were all highly sophisticated business men, had such an effect been their intention, there undoubtedly would have been a written cancellation of the underlying Note, as well as a written release of the defendants' obligations under the terms of the Guarantee. The absence of such documents is a telling indication that the Satisfaction of Mortgage means only what it says—that it was intended to release the collateral, but not to extinguish the underlying debt or to release the Rosenbergs from their obligations under the Guarantee.

■ Next, the Receiver contends that the delivery of Satisfaction of Mortgage in July 1996 to Franklin Realty by Pfeffer and Blutrich was a fraudulent conveyance

---

**2.** For the relationship of NuLenda to Pfeffer, Blutrich, LPDA and the Rosenbergs, see the April 1998 Plea Agreements of Pfeffer and Blutrich. The Receiver suggests that the July 26 Satisfaction of Mortgage document was forged. There is a high probability that this belief is correct. Since, however, that matter cannot be properly be resolved on this motion for summary judgment, its authenticity is assumed for purposes of resolving this motion.

under DCL § 273 since it was made for less than fair consideration in the time when Pfeffer, Blutrich and LPDA were insolvent. The Receiver also contends that the conveyance was fraudulent under § 273–a of the DCL because it was made without fair consideration at a time when Pfeffer, Blutrich and LPDA were defendants in an action for money damages.

■ Section 273–a provides:

every conveyance made without fair consideration when the person making it is a defendant in an action for money damages or a judgment in such action has been docketed against him is fraudulent as to the plaintiff in that action without regard to the actual intent of the defendant if, after a final judgment for the plaintiff, the defendant fails to satisfy the judgment.

Therefore, three elements need to be satisfied under § 273–a: (1) the conveyance was made without fair consideration; (2) at the time of the transfer, the transferor was a defendant in an action for money damages or a judgment in such action has been docketed against him; and (3) a final judgment has been rendered against the transferor that remains unsatisfied. *Lippe v. Bairnco Corporation,* 229 B.R. 598, 603 (S.D.N.Y.1999) (citations omitted); *Dixie Yarns, Inc. v. Forman,* 906 F.Supp. 929, 935 (S.D.N.Y.1995).

Here, there is no dispute as to the second and third elements. The Satisfaction was delivered by Pfeffer purportedly acting on behalf of LPDA, at the time when Blutrich and Pfeffer were defendants in the LPDA action, a lawsuit in which the Insurance Commissioner sought, *inter alia,* to set aside the Participation Agreement and to recover millions in damages. Moreover, in view of the relationship between Pfeffer, Blutrich, the Rosenbergs and Franklin Realty as is apparent from the plea agreements, the Rosenbergs undoubtedly knew well before July 1996 that the Delaware Insurance Commissioner was attempting to recover funds stolen from NHL such as the Franklin Realty mortgage which was part of the fraudulent Participation Agreement. In addition, the judgment which has been entered in the LPDA action against LPDA, Pfeffer and Blutrich—in amounts exceeding $100,000,000—has yet to be paid.

As to the first element—fair consideration—the $855,000 was not paid to NHL, to whom the debt was owed, but to an entity called NuLenda, a separate company owned and controlled by Pfeffer and Blutrich and consequently NHL received no consideration from this transfer. Plaintiff has demonstrated that the time of this transaction, the property was valued in excess of $4,665,000 as evidenced by the appraisal of BCS Valuations Inc. Consequently, there is no genuine issue of material fact as to whether fair consideration was supplied for the satisfaction. § 272 of the Debtor Creditor Law requires, for "fair consideration" to exist, an exchange of property or the satisfaction of antecedent debt for reasonably equivalent value and good faith. A payment of $855,000 to release a $4,300,000 loan is not, by any calculus, fair consideration.

In response, the Rosenbergs contend that fair consideration was given when the mortgage was released in July 1996. They contend that because Franklin Realty and LPDA entered into an earlier Modification Agreement dated July 9, 1992 reducing the principal amount of the Franklin Realty obligation from $4,300,000 to $2,800,000, the subsequent payment of $855,000 was fair because it constituted a reasonable equivalent exchange in view of the reduced principal outstanding.

Assuming the July 1992 document to be authentic (a highly dubious assumption but one which is mandatory under Rule 56 Fed.R.Civ.P.) defendants' argument still has no merit since the Modification Agreement, on its face, does not trigger a reduction on the principal amount of the loan. The Agreement provides that the contemplated reduction in principal is contingent, that a balloon payment is due on March 1,

1996 of $2,813,387 and that, in the event of default, the modification "shall be deemed null and void *ab initio,* for all purposes for all purposes." It is not undisputed that the March 1996 payment was never made therefore no reduction could have occurred.

Moreover, even if the reduction had occurred, the $855,000 purported payment still would have been for less than fair consideration. Under the Debtor and Creditor Law, an $855,000 payment to liquidate a $2.8 million obligation is still not "fair consideration."

■ The Rosenberg's next claim is because they were not defendants in the LPDA action, they have no exposure as the recipients of a fraudulent conveyance. Contrary to this contention, § 273-a contains no language which requires that the transferee be a named defendant in the antecedent action for money damages that triggered the fraudulent conveyance.

■ The purpose of § 273-a is to provide a remedy for a creditor who has brought an action for money damages against a party who, after being named a defendant in that action, conveys assets to a third party for less than fair consideration leaving the ultimate judgment unpaid. *See Lippe v. Bairnco Corp.,* 229 B.R. 598, 601 (S.D.N.Y.1999) *citing, Stochastic Decisions, Inc. v. DiDomenico,* 995 F.2d 1158, 1172 (2d Cir.1993). That is precisely what occurred here.

■ Plaintiff is entitled to recover on his claim pursuant to Debtor and Creditor Law § 273 as well. According to that provision,

> Every conveyance made and every obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without fair consideration.

3. Plaintiff has established that this amount is due and owing. Defendants, in response, have adduced no admissible facts adequately

Accordingly, only two elements need to be satisfied under § 273:(1) the conveyance was made without fair consideration; and (2) that the transferor was or was rendered insolvent. *See Wechsler v. Hunt Health Systems, Ltd.,* 1999 WL 397751, at *20 (S.D.N.Y.1999).

■ Both elements are satisfied here. There is no question that Pfeffer and Blutrich and LPDA were all insolvent in July 1996 as the consent judgment and their plea allocutions made clear and, as previously noted, the purported Satisfaction of the Franklin Mortgage was not supported by fair consideration. Moreover, while there is ample reason to suspect that the purported Satisfaction was executed with intent to defraud, the existence of such intent is not necessary under § 273. *See* New York Debtor and Creditor's Law § 273; *see also Pashaian v. Eccelston Properties, Ltd.,* 88 F.3d 77, 82 (2d Cir. 1996). Accordingly, § 273 is also satisfied.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for summary judgment is granted. Plaintiff is entitled to judgment:

1. On his Guarantee claims against Abraham Rosenberg, Isaac Rosenberg and Rose Castle (Claims one, two and three of the Amended Complaint) in the amount of $9,982,487,[3] plus attorney's fees to be determined, as well as additional interest, late charges and penalties accrued from the date of that calculation to the date the judgment entered; and

2. Relief on the Receiver's fraudulent conveyance claims against Abraham Rosenberg, Isaac Rosenberg and Franklin Realty (Claims four and five of the Amended Complaint) for a money judgement, as specified above, and for an order striking and setting aside the Satisfaction of Mortgage and reinstating the Franklin Realty

proving any different amount due and owing under the Note.

Mortgage as a first priority on the Franklin property; and

3. Imposing a constructive trust over the Franklin Realty property for the benefit of the plaintiff.

Plaintiff shall settle a proposed judgment in 10 days on three days notice.

**SO ORDERED.**