Richard A. LIPPE, Archie R. Dykes and John J. Robbins, as Trustees for Keene Creditors Trust, Plaintiffs,

v.

BAIRNCO CORPORATION; The Genlyte Group, Inc., Kaydon Corporation, Kasco Corporation; Shielding Systems Corporation; Arlon, Inc.; Glenn W. Bailey; Luke E. Fichthorn, III; Richard A. Shantz; Eugene Cafiero; Gerald Mahoney; Howard Mileaf; Fred Heller; Frank Metzger; Eugene R. Anderson; Frederick Harvey; Edward Utz; Kidder, Peabody & Co.; Anderson Kill Olick & Oshinsky, P.C.; Debevoise & Plimpton; and Arthur Andersen & Co., Defendants.

No. 96 Civ. 7600(DC).

United States District Court, S.D. New York.

Jan. 6, 1999.

Levy Phillips & Konigsberg, LLP, by Stanley J. Levy, New York City and Budd Larner Gross Rosenbaum Greenberg & Sade, P.C., by David R. Gross, Short Hills, New Jersey, for plaintiffs.

Friedman Kaplan & Seiler LLP, by Edward Friedman, Andrew W. Goldwater, New York City, for Eugene Cafiero, Estate of Frederick Harvey, Gerald Mahoney, Howard Mileaf, and Frank Metzger.

Debevoise & Plimpton, by John H. Hall, Townsend Davis, Jr., Jeremy Feigelson, Andrew K. Glenn, New York City, for Luke E. Fichthorn, III.

Schulte Roth & Zabel, LLP, by Irwin J. Sugarman, Brooks R. Burdette, Thomas R. Fallati, New York City, for Richard Shantz.

Morvillo, Abramowitz, Grand, Iason & Silberberg PC, by Michael W. Mitchell, New York City, for Eugene R. Anderson.

McCarter & English, by Andrew T. Berry, Charles F. Rysavy, New York City, for Fred Heller.

Abowitz, Rhodes & Dahnke, P.C., by Murray E. Abowitz, Janice M. Dansby, Oklahoma City, Oklahoma, for Glenn W. Bailey.

## OPINION

CHIN, District Judge.

Before the Court are the motions of the remaining nine individual defendants, Eugene R. Anderson, Glenn W. Bailey, Eugene Cafiero, Luke E. Fichthorn, III, Fred Heller, Gerald Mahoney, Frank Metzger, Howard Mileaf, and Richard Shantz,[1] to dismiss the amended complaint pursuant to Fed.R.Civ.P. 9(b) and 12(b)(6).

For the reasons that follow, the motions are granted in part and denied in part.

## BACKGROUND

### A. *The Facts*

The facts are set forth in the Court's prior decisions. *See Lippe v. Bairnco Corp.,* 225 B.R. 846 (S.D.N.Y.1998) (*"Lippe II"*); *Lippe v. Bairnco Corp.,* 218 B.R. 294 (S.D.N.Y. 1998) (*"Lippe I"*); *see also In re Keene Corp.,* 164 B.R. 844, 846–48 (Bkrtcy.S.D.N.Y. 1994); *In re Keene Corp.,* 162 B.R. 935 (Bkrtcy.S.D.N.Y.1994).

The nine individual defendants are or were officers, directors, and/or shareholders of Keene Corporation ("Keene"), Kaydon Corporation ("Kaydon"), The Genlyte Group ("Genlyte"), Kasco Corporation ("Kasco"), Arlon Inc. ("Arlon"), and Bairnco Corpora-

---

**1.** Plaintiffs also named as individual defendants in this action Frederick Harvey, who was· a director of Keene from 1967 to 1991, and Edward C. Utz. Mr. Harvey died in 1991 and plaintiffs have advised the Court that they are abandoning their claims against him. (*See* Pls.Opp. at 43). I dismissed the claims against Utz *sua sponte* by order dated April 3, 1998.

tion ("Bairnco"), who purportedly participated in the alleged fraudulent scheme to shield Bairnco and its subsidiaries from Keene's asbestos liability. Plaintiffs allege, among other things that, by participating in the alleged fraudulent transfers (collectively the "Transactions"), the individual defendants breached their fiduciary duties to Keene, and in some instances, to Keene's creditors. In addition, the amended complaint alleges that Bailey, Fichthorn, Shantz, Heller, and Metzger were the recipients of Kaydon and/or Genlyte stock purportedly fraudulently conveyed to them by Bairnco when Bairnco "spun off" its stock holdings in Kaydon and Genlyte in 1984 and 1988, respectively, to its shareholders.

The amended complaint alleges the following as to each defendant:

### 1. *Anderson*

Anderson was a Keene director from 1968 to 1990 and briefly served as chairman of its board for two months in early 1990. (Am. Cmplt.¶ 26). By July 30, 1990, Anderson resigned from the Keene board. (*See* Defs. Cons.App.Ex. 29 (Bairnco 8–K dated Aug. 6, 1990)). A January 21, 1980 memorandum from A.S. Crimmins of Keene to Bailey (then-chairman of Keene) notes that Anderson "in drafting the asbestos footnote for the Keene Annual report, had 'gotten sticky' and indicated that 'because of the punitive damage problem, [Anderson Kill] can't tell what Keene's exposure could be, and, therefore, the financial position of the company is questionable.'" (Am.Cmplt.¶ 58).

From 1982–1990, Keene declared and paid dividends to Bairnco in excess of $41 million. The dividends are purportedly unlawful because Keene was either insolvent or rendered insolvent by the payment of them. (*Id.* ¶ 223). As a Keene director from 1982–1989, Anderson purportedly "voted for or concurred in the declaration and payment of unlawful dividends." (*Id.* ¶ 224).

### 2. *Bailey*

Bailey was the chairman of Bairnco's board of directors from 1981 to 1990, and has

been chairman of Keene's board since 1981. Bailey was also chairman of Genlyte's board from 1984 to 1989, and has been a director of Genlyte since 1984. Finally, Bailey was chairman of Kaydon's board from 1983 to 1987, and has been a director of Kaydon since 1983. According to plaintiffs, "Bailey was the architect of the scheme to defraud, hinder and delay Keene's creditors." (*Id.* ¶ 18).

Bailey became Keene's president and chairman of its board in 1967. (*Id.* ¶ 33). In 1968, Keene acquired Baldwin–Ehret–Hill ("BEH"), a company that manufactured products containing asbestos. (*Id.* ¶¶ 35–36). Although he has denied it in the past, Bailey allegedly knew that asbestos was dangerous when Keene acquired BEH. (*Id.* ¶¶ 40–44). Yet, Keene continued to sell products containing asbestos until at least 1980. (*Id.* ¶¶ 49, 51–53).

In approximately March 1981, Keene publicly announced its intention to form Bairnco as a holding company for Keene. (*Id.* ¶ 73). Bailey, who continued to serve as Keene's president, became the president and chairman of Bairnco. *Id.* When Keene became a wholly owned subsidiary of Bairnco that same year, Bailey purportedly "concocted a business rationale [for spinning off profitable Keene divisions] to mask the[ ] plans to defraud Keene's creditors." (*Id.* ¶ 76). Bailey accomplished this in part by filing a misleading Registration Statement in 1981 with the S.E.C., stating that Keene's board "believe[d] that the proposed new corporate structure w[ould] give Bairnco the flexibility it need[ed] in making acquisitions." (*Id.* ¶ 77). Bairnco's 1981 Form S–14 stated that the "new structural format may serve to isolate any new acquisitions from any of Keene's current liabilities including liabilities related to the asbestos lawsuits." (*Id.* ¶ 79).

To further legitimize the purported fraudulent scheme, Bailey "papered" his dealings with Debevoise & Plimpton ("Debevoise") to include "litigation-friendly correspondence that maintained that Bairnco was not intended as a device to move Keene's existing

assets to a holding company away from Keene's creditors." (*Id.* ¶ 81).

Beginning in 1982, Bairnco began spinning off Keene divisions in a series of transactions. Just prior to the Kaydon spinoff transaction in 1984, Kaydon sold 10,000 shares of its Class B stock to Bailey. (*Id.* ¶ 95). In addition, Bailey received stock in either the 1984 Kaydon spinoff, the 1988 Genlyte spinoff or both. (*Id.* ¶ 218).

From 1982–1990, Keene declared and paid dividends to Bairnco in excess of $41 million. The dividends are purportedly unlawful because Keene was either insolvent or rendered insolvent by the payment of them. (*Id.* ¶ 223). As a Keene director from 1982–1990, Bailey purportedly "voted for or concurred in the declaration and payment of unlawful dividends." (*Id.* ¶ 224).

### 3. *Cafiero*

Cafiero was the president and director of Keene from 1982 to 1986 and was a director of Genlyte from 1984 to 1985. (*Id.* ¶ 21).

From 1982–1990, Keene declared and paid dividends to Bairnco in excess of $41 million. The dividends are purportedly unlawful because Keene was either insolvent or rendered insolvent by the payment of them. (*Id.* ¶ 223). As a Keene director from 1982–1985, Cafiero purportedly "voted for or concurred in the declaration and payment of unlawful dividends." (*Id.* ¶ 224).

### 4. *Fichthorn*

Fichthorn has been a director and shareholder of Bairnco since 1981 and chairman of its board since May 1990. He was also chairman of Bairnco's Audit Committee "throughout the 1980's" and is chairman of the boards of Kasco and Arlon. (*Id.* ¶ 19).

In 1980, when Keene wanted to isolate its assets from its increasing asbestos liability, Fichthorn recommended that Keene retain Debevoise as its special counsel on legal issues that would arise if Keene spun off some of its assets to stockholders as a dividend.

(*Id.* ¶ 65). Like Bailey, Fichthorn received stock in either the 1984 Kaydon spinoff, the 1988 Genlyte spinoff or both (*Id.* ¶ 218).

As chairman of Bairnco's Audit Committee, Fichthorn reviewed and approved Bairnco's public financial statements prior to their publication. Fichthorn allegedly knew that the financial statements substantially understated and misrepresented the magnitude of Keene's future asbestos liability and Keene's ability to cover that liability. (*Id.* ¶ 256). From 1981–1989, Fichthorn "fully participated" in Bairnco's allegedly false filings with the S.E.C. (*Id.* ¶ 257).

### 5. *Heller*

Heller has been a director of Genlyte since 1984 and received shares of Genlyte stock in the 1988 Genlyte spinoff. Heller was also president of Genlyte from 1984 to 1989, acting president of Genlyte from January 1991 to August 1991, and has been chairman of Genlyte's board of directors since July 1989. (*Id.* ¶ 23).

Heller "knew" about "the ongoing breaches of fiduciary duties to" Keene's asbestos creditors and "knowingly provided substantial assistance to this tortious conduct by cooperating in and approving the lighting asset transfers to Genlyte." (*Id.* 259). In addition, Heller received stock in either the 1984 Kaydon spinoff, the 1988 Genlyte spinoff or both (*Id.* ¶ 218).

### 6. *Mahoney*

Mahoney is a former Keene vice president of finance as well as president of Keene's Lighting Division. (*Id.* ¶ 25).

Mahoney wrote a memorandum to Bailey on December 12, 1980 about Keene's spinoff idea to shield its assets from asbestos liability. The memorandum stated: "Although the spinoff concept is dead for the time being, I thought we should go ahead with the idea of establishing New Keene as a holding company. If this is done right, this should protect future acquisitions from asbestos [liability] . . . ." (*Id.* ¶ 70).

### 7. *Metzger*

Metzger has been a director of Genlyte since 1984, and was a senior vice president of Bairnco from 1981 to 1988. In addition, Metzger was acting vice president of Keene in the mid–1980's. He owns stock in both Genlyte and Bairnco. (*Id.* ¶ 24).

Just prior to the Kaydon spinoff transaction in 1984, Kaydon sold 100 shares of its class B stock to Metzger. (*Id.* ¶ 95). In addition, Metzger received stock in either the 1984 Kaydon spinoff, the 1988 Genlyte spinoff or both (*Id.* ¶ 218).

### 8. *Mileaf*

Mileaf was vice president, general counsel, and secretary of Keene from 1981 to 1991. (*Id.* ¶ 22). Mileaf was purportedly aware that Keene's asbestos liability was serious.

On November 25, 1980, Mileaf wrote a memorandum to Bailey requesting permission to have Debevoise begin working on a strategy for Keene to shield its assets from asbestos liability. (*Id.* ¶¶ 68–69). In the memorandum, Mileaf stated, "the asbestos problem has limited our options in handling the currently owned assets for the benefit of shareholders ... [but] if Keene were a subsidiary of a holding company, such holding company could have other subsidiaries that are not part of the assets subject to risk in the asbestos cases." (*Id.* ¶ 68). As to legal advice, Mileaf stated, "I would like to ask [Debevoise] how can Keene be structured so that future new ventures can have the flexible, entrepreneurial qualities that we want, and also be exempt from the asbestos problem? I would hope that [Debevoise] could come up with a firm plan somewhat along the holding company line." (*Id.* ¶ 69).

Not satisfied with simply safeguarding future acquisitions from asbestos liability, however, Mileaf commissioned Avenir Development Bankers Counselors ("Avenir") to suggest other corporate strategies to help Keene deal with its asbestos crisis. One of Avenir's recommendations was to reconsider a spinoff strategy and it suggested that

Keene examine ways of segregating its legal liabilities from its major profit centers. (*Id.* ¶¶ 71–72).

When Bairnco was formed in 1981, Mileaf advised Bailey in a March 31, 1981 memorandum that he would review the procedures for running Bairnco and Keene as separate entities. Mileaf wanted to avoid successor liability between the two entities and sought legal advice from Debevoise in that regard. (*Id.* ¶ 74).

Finally, on June 29, 1981, Mileaf wrote that he anticipated "that hundreds of people each year will develop asbestos related diseases for the rest of this century and beyond." (*Id.* ¶ 60).

### 9. *Shantz*

Shantz has been a director of Bairnco since August 1990 and was its president and shareholder from August 1990 to 1992. In addition, Shantz was Keene's president from 1981 to 1982, a Kaydon director from 1982 to 1989, chairman of Kaydon's board from 1987 to 1989, chief executive officer of Kaydon from 1984 to 1986, and Kaydon's president from 1983 to 1987. (*Id.* ¶ 20).

Just prior to the Kaydon spinoff transaction in 1984, Kaydon sold 550,000 shares of its class B stock to Shantz. (*Id.* ¶ 95). In addition, Shantz received stock in either the 1984 Kaydon spinoff, the 1988 Genlyte spinoff or both (*Id.* ¶ 218).

### B. *Prior Proceedings*

Keene filed for bankruptcy on December 3, 1993. Several months earlier on August 11, 1993, an action against the corporate defendants and some of the individual defendants (Bailey, Cafiero, Fichthorn, Heller, Metzger, Mileaf, and Shantz) was commenced in this Court (the *"Coleman"* action). On August 13, 1993, a similar lawsuit was filed in the Eastern District of New York (the *"Huffman"* action). The plaintiffs in the *Coleman* and *Huffman* cases asserted claims for fraudulent conveyance under the New York

Debtor and Creditor Law (the "NYDCL") §§ 273–276, tort liability as successor corporations, veil piercing, breach of fiduciary duties, conspiracy, and joint enterprise liability. (*See* Am.Cmplt. ¶¶ 167–69).[2]

### C. *Plaintiffs' Causes of Action Against the Individual Defendants*

The amended complaint asserts the following claims against the following individuals:

1. A fraudulent conveyance claim, pursuant to NYDCL §§ 273–278, against Bailey, Fichthorn, Heller, Shantz, and Metzger for the 1984 Kaydon and 1988 Genlyte spinoff transactions (Am.Cmplt. Count VI);

2. A payment of unlawful dividends claim, pursuant to N.Y.Bus.Corp.L. (the "NYBCL") §§ 510 and 719, against Bailey, Anderson, and Cafiero (AmCmplt. Count VII);

3. A common law breach of fiduciary duty claim against all of the individual defendants (*id.* Count XI);

4. A claim for misconduct by corporate officers and directors (breach of fiduciary duty), pursuant to NYBCL § 720(a), against Anderson, Bailey, Cafiero, Fichthorn, Mahoney, Metzger, Mileaf, and Shantz. (Am. Cmplt. Count XII)[3];

5. A conspiracy to defraud claim against all of the individual defendants (*id.* Count XIII);

6. A RICO claim, pursuant to 18 U.S.C. §§ 1961 *et seq.*, against Bailey, Fichthorn, Metzger, and Mileaf (Am.Cmplt. Count XIV); and

7. A claim for aiding and abetting RICO violations against Mahoney, Shantz, and Anderson (*id.* Count XV).

### D. *Individual Defendants' Motions*

The defendants contend that plaintiffs lack standing to pursue the claims asserted against them; the statute of limitations precludes all of plaintiffs' claims; the amended complaint fails to sufficiently allege fraud; and the amended complaint fails to state a claim upon which relief can be granted.

I dismissed the RICO claims in *Lippe I* and *Lippe II*. I addressed the standing and statute of limitations defenses (in the context of the fraudulent conveyance claims) in *Lippe II* as well as in my memorandum decision issued January 5, 1999 ("*Lippe v. Bairnco*, 229 B.R. 598 (*Lippe III*) (1999)") granting in part and denying in part the corporate defendants' motion for reconsideration of *Lippe II*. Those rulings apply with equal force here.

### DISCUSSION

### A. *Applicable Legal Standards*

#### 1. *Motions to Dismiss*

In reviewing a motion to dismiss, I must accept the factual allegations set forth in the complaint as true, and draw all reasonable inferences in favor of the plaintiff. *See Bernheim v. Litt,* 79 F.3d 318, 321 (2d Cir.1996). A complaint may not be dismissed under Rule 12(b)(6) unless it "appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Cooper v. Parsky,* 140 F.3d 433, 440 (2d Cir.1998) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In other words, the issue before the Court on this motion to dismiss "is not whether ... plaintiff will ulti-

---

**2.** Plaintiffs argue that the filing of the *Coleman* action tolled the running of the statute of limitations against all the corporate and individual defendants named in this case. I assessed the timeliness of the fraudulent conveyance claims against the corporate defendants in *Lippe II* based on the date Keene filed for bankruptcy. Even if the Court had considered the filing of the *Coleman* and *Huffman* actions to toll the statute of limitations, the result in *Lippe II* would be no different. The same is true here. Claims that the Court finds untimely against the defendants here were untimely in August 1993 as well as

December 1993. There is a question, which I do not decide, as to whether the statute of limitations was tolled as to defendants in this case who were not named as defendants in *Coleman* and *Huffman.*

**3.** Plaintiffs originally asserted a claim against Heller as well for aiding and abetting a NYBCL § 720(a) violation. In their opposition, however, plaintiffs advised the Court that they have abandoned this claim. (*See* Pls.Opp. at 43).

mately prevail but whether the claimant is entitled to offer evidence to support the claims." *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir.1995) (citation omitted), *cert. denied,* 519 U.S. 808, 117 S.Ct. 50, 136 L.Ed.2d 14 (1996).

### 2. *Statute of Limitations*

#### a. *Fraudulent Conveyance*

Plaintiffs' fraudulent conveyance claim against some of the individual defendants based on the Kaydon and Genlyte spinoff transactions (Counts VI of the amended complaint) is governed by a limitations period of six years. N.Y.C.P.L.R. (the "CPLR") § 213(1). To the extent plaintiffs allege actual fraud, which is not clear on the face of the amended complaint, the claim is governed by a limitations period of six years from the date of the alleged fraud or two years from the date of discovery, whichever is later. CPLR §§ 213(8) and 203(g).

#### b. *Breach of Fiduciary Duty and Unlawful Dividends Claims*

■ The parties dispute what limitations period applies to the breach of fiduciary duty and payment of unlawful dividends claims. Defendants contend that a three-year limitations period applies. *See* CPLR §§ 214(2) (action to recover upon liability or penalty created by statute) and 214(4) (action to recover for injury to property); *Purves v. ICM Artists, Ltd.,* 119 B.R. 407, 410–11 (S.D.N.Y. 1990) (holding that three-year statute applies to claims under NYBCL § 720(b)). Plaintiffs contend that a six-year limitations period applies. *See* CPLR §§ 213(2) (action upon contractual obligation or liability, express or implied) and 213(7) (action by or on behalf of corporation against director, officer, or stockholder); *In re Argo Communications Corp.,* 134 B.R. 776, 785–88 (Bkrtcy.S.D.N.Y.1991)

(holding that six-year statute applies to bankruptcy trustee's suit, in name of debtor and for benefit of its creditors, against related corporations for breach of fiduciary duty and corporate waste). I conclude that the six-year CPLR § 213(7) limitations period applies. *See Whitney Holdings, Ltd. v. Givotovsky,* 988 F.Supp. 732, 741–43 (S.D.N.Y. 1997) (holding that six-year statute applies where corporation sues a former officer, director, or shareholder for breach of fiduciary duty); *FDIC v. Abel,* No. 92 Civ. 9175, 1995 WL 716729, at *10–11 (S.D.N.Y.1995) (holding that six-year statute applies to claims by FDIC, as receiver, against former officers of bank for breach of fiduciary duty); *Argo Communications, supra.*

Defendants contend that CPLR § 213(7) applies only to shareholder derivative actions. They also contend that the claims at issue are subject to the three-year statute of limitations for actions to recover damages for an injury to property pursuant to CPLR § 214(4) or for actions to recover upon a liability, penalty, or forfeiture created or imposed by statute pursuant to CPLR § 214(2). I reject these propositions.

CPLR § 213(7) states that "an action by or on behalf of a corporation against a present or former director, officer, or stockholder for an accounting, or to procure a judgment on the ground of fraud, or to enforce a liability, penalty or forfeiture, or to recover damages for waste or for an injury to property or for an accounting therewith" shall be "commenced within six years." CPLR § 213(7). This section "supplants all other statutes of limitation potentially applicable to a suit on a corporation's claim against its director, officer, or shareholder." *Whitney Holdings,* 988 F.Supp. at 742. Because this specific statute of limitations encompasses the breach of fiduciary duty and payment of unlawful dividends claims at issue,[4] the more general limitations periods outlined in CPLR

4. Plaintiffs are suing the officer and director defendants on behalf of Keene. "[A] bankruptcy trustee, suing on behalf of the debtor under New York law, may pursue an action for breach of fiduciary duty against the debtor's fiduciaries." *In re The Mediators, Inc.,* 105 F.3d 822, 826–27

(2d Cir.1997) (citing *In re Keene Corp.,* 164 B.R. 844, 853 (Bkrtcy.S.D.N.Y.1994)). Likewise, § 720 of the NYBCL permits an action against officers and directors of a corporation for, among other things, unlawful conveyances.

**914**

§§ 214(2) and (4) do not apply.[5]

### C. *Conspiracy to Defraud*

 There is no independent tort of conspiracy under New York law. Rather, conspiracy claims are governed by the limitations period that applies to the underlying tort. Accordingly, this claim is governed by a six-year limitations period because it is based on plaintiffs' fraudulent conveyance claims.

### B. *The Claims*

#### 1. *Fraudulent Conveyance*

Count VI is asserted against Bairnco, Kaydon, Genlyte, Bailey, Fichthorn, Heller, Shantz, and Metzger and alleges that the Bairnco spinoffs to its shareholders of its Kaydon stock in 1984 and its Genlyte stock in 1988 were fraudulent conveyances. In *Lippe II*, I dismissed Count VI as to Kaydon and Genlyte, but denied Bairnco's motion to dismiss Count VI. 225 B.R. at 857–58. I denied the motion in part because I held that I could not decide as a matter of law whether plaintiffs had standing to bring these fraudulent conveyance claims against Bairnco. I also did not address the question of whether the amended complaint had sufficiently pled fraudulent conveyance claims based on the Kaydon and Genlyte spinoffs.

On the present motions to dismiss the claims against the individual defendants, I have more fully considered both the standing issue and the sufficiency of the allegations of Count VI. I hold that plaintiffs do not have standing to challenge the spinoffs and that

Count VI fails to sufficiently allege a fraudulent conveyance claim. In addition, any fraudulent conveyance claim based on the 1984 Kaydon spinoff is time-barred.

For these reasons, which are more fully explained below, Count VI is dismissed as to Bailey, Fichthorn, Heller, Shantz, and Metzger. In addition, I am *sua sponte* reconsidering that portion of *Lippe II* that denied Bairnco's motion to dismiss Count VI and Count VI is dismissed as to Bairnco as well.

#### a. *Standing*

 Plaintiffs have standing to step into the shoes of a creditor to bring an action to avoid a transfer of *Keene*'s property. 11 U.S.C. § 544. Hence, plaintiffs have standing to challenge the transactions in question to the extent set forth in *Lippe II* because those transactions involved the conveyance of Keene's assets.

In Count VI, however, plaintiffs seek to void not the transfer of Keene's property, but the transfer of *Bairnco*'s property—Bairnco's stock in Kaydon and Genlyte that was spun off to Bairnco's shareholders. Keene did not own or have any interest in the stock and thus Keene lacks standing to challenge the conveyance of the stock.

In *Lippe II*, I denied Bairnco's motion to dismiss Count VI because I concluded that plaintiffs had sufficiently pled a cause of action against Bairnco for piercing the corporate veil. I concluded that if plaintiffs successfully pierce the corporate veil in this case, Keene's creditors would become Bairnco's creditors.

Upon further consideration, however, I conclude that even if plaintiffs pierce the

---

**5.** Plaintiffs contend that even if the six-year statute of limitations has run, the claims are still viable because they are subject to a two-year discovery rule and/or because the statute of limitations is equitably tolled based on a variety of different theories and/or doctrines. (*See* Pls.Opp. at 177) (citing *Menke v. Glass*, 898 F.Supp. 227, 232 (S.D.N.Y.1995)). I reject this argument and hold that no tolling of the statute of limitations is warranted in this case. First, it is irrelevant whether plaintiffs are entitled to a discovery period because Keene fully designed, consented to, and participated in the alleged fraudulent scheme. (*See* Am.Cmplt. ¶¶ 1, 2, 18, 50, 51, 52,

54, 58, 64, 65, 67, 68, 69, 70, 73, 76, 79, 81, 82, 84, 93, 111, 118, 136, 146, 150, 158, 171). Plaintiffs cannot contend that Keene was unaware of the alleged breaches of fiduciary duties or any other allegedly unlawful action. Second, as noted in *Lippe II*, there is "no basis to support plaintiffs' bald contention that the statute of limitations for any untimely claim ... should be 'equitably tolled' based on fraudulent concealment, adverse domination, or equitable estoppel." 225 B.R. at 854.

corporate veil, that would simply mean that Keene's creditors could look to Bairnco to satisfy their claims. But that would not mean that Keene would have standing to attack the transfer of specific Bairnco property—its stock in Kaydon and Genlyte. The right to look to Bairnco's assets generally to satisfy Keene's debts would not give plaintiffs the right to attack a particular transaction as a fraudulent conveyance. Hence, plaintiffs lack standing to challenge Bairnco's transfer of its stock in Kaydon and Genlyte to its shareholders.

### b. *Sufficiency of the Pleading*

 Even assuming plaintiffs have standing to challenge the Kaydon and Genlyte spinoffs as fraudulent conveyances, Count VI is insufficiently pled. First, it states that it is brought under §§ 273–278 of the NYDCL. The different sections of the NYDCL, however, set forth different theories with different requirements and plaintiffs lump the sections together without making any real effort to allege how the requirements are met.

More significantly, although Count VI alleges in a conclusory manner that Bairnco was insolvent when the spinoffs were made or that it was rendered insolvent by the spinoffs (Am.Cmplt.¶ 216), that conclusory allegation is contradicted by more specific allegations in the amended complaint. *See Hirsch v. Arthur Andersen & Co.,* 72 F.3d 1085, 1092 (2d Cir.1995) (on a motion to dismiss, "[g]eneral, conclusory allegations need not be credited ... when they are belied by more specific allegations of the complaint"). For example, the amended complaint alleges that in 1984, the year of the Kaydon spinoff,

> Bairnco was listed as a Fortune 500 company for the first time and experienced a year of record earnings. Bairnco's dividend payments were up 30 percent, sales from operations increased 34 percent, and income from continuing operations increased 46 percent.

(Am.Cmplt. ¶ 112). The amended complaint contains additional allegations of Bairnco's continued financial success. (*See id.* ¶ 114 ("by 1993, Bairnco ... would enjoy sales exceeding $150 ... million"), ¶ 162 ("[T]he companies that were formed with assets stripped from Keene proved to be very successful. By 1992, for example, Bairnco had sales of $164 million and earnings of 70 cents a share.")). Publicly filed documents, including Bairnco's 1984 and 1988 annual reports, confirm that Bairnco remained financially healthy after the Kaydon and Genlyte spinoffs. Hence, the amended complaint fails to state a claim for fraudulent conveyance under §§ 273, 274, and 275 of the NYDCL, for each of those sections requires, to one extent or another, that the transferor be unable to pay its debts.

Nor does Count VI allege the basic requirements of a claim under NYDCL § 273–a. It does not allege, for example, the pendency of a lawsuit against Bairnco at the time of the spinoffs or the existence of an unsatisfied judgment. *See Lippe III,* at page 911.

Finally, although Count VI states in conclusory fashion that the spinoffs were "actually intended to further hinder, delay or defraud Keene's asbestos-related creditors" (Am.Cmplt.¶ 214), it fails to meet the heightened pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure for fraud claims. Count VI fails to allege facts that give rise to the "strong inference" that the Kaydon and Genlyte spinoffs were intended to hinder, delay, or defraud Keene's creditors, when it is apparent that Bairnco was left with hundreds of millions of dollars in assets after those transactions. *See, e.g., Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994) (fraud complaint must allege facts to support a "strong inference of fraudulent intent").

Hence, Count VI must also be dismissed for insufficiency of pleading.

### c. *Statute of Limitations*

Finally, plaintiffs' claims based on the Kaydon spinoff in 1984 are clearly time-barred,

as that transaction occurred well more than six years prior to the filing of the *Coleman /Huffman* actions. Plaintiffs cannot rely on the two-year discovery rule for actual fraud, as they have failed to allege any specific facts to support a claim of actual fraud with respect to the Kaydon spinoff.

Defendants have also challenged the timeliness of the claim based on the Genlyte transaction, but I do not reach the question in view of my holdings above.

### 2. Breach of Fiduciary Duty and Payment of Unlawful Dividends

Counts XI and XII assert claims for breach of fiduciary duty against all nine individual defendants and Count VII asserts a claim for payment of unlawful dividends against Bailey, Anderson, and Cafiero. The three Counts are related and thus I discuss them together. Plaintiffs contend in these counts that defendants breached their fiduciary duties to Keene, pursuant to the NYBCL as well as under common law, by "authorizing and approving": (1) "the denuding and stripping of Keene's operating assets and its profit-making and growth potential," (2) "the transfer of those assets for inadequate consideration," (3) "the loss of substantial future profits and potential future growth to Bairnco ... putting those assets, profitability, and growth beyond the reach of Keene's asbestos creditors," (4) "the payment of unlawful dividends to Bairnco" (pursuant to NYBCL § 510, Count VII of the amended complaint), and/or (5) "by unjustly enriching themselves in the process." (Am. Cmplt.¶ 255).

Counts VII, XI, and XII must be dismissed as to all the individual defendants, except Bailey, because: first, certain of the individual defendants did not owe a fiduciary duty to Keene, either at all or during the relevant time period; and second, the amended complaint fails to sufficiently plead a claim for breach of fiduciary duty.

#### a. Lack of a Fiduciary Duty

■ Only *Keene* officers and directors can be held liable to plaintiffs for breach of fidu-

ciary duty and payment of unlawful dividends. Plaintiffs cannot assert these claims on behalf of Bairnco, Genlyte, Kaydon, Arlon, or Kasco because plaintiffs have no standing to do so and the directors and officers of these entities did not owe a fiduciary duty to Keene. *See, e.g., Aviall, Inc. v. Ryder Sys., Inc.,* 913 F.Supp. 826, 832 (S.D.N.Y.1996) ("the officers and directors of a parent company owe allegiance only to that company and not to a wholly owned subsidiary"), *aff'd,* 110 F.3d 892 (2d Cir.1997). Fichthorn and Heller were never officers or directors of Keene and thus they owed no fiduciary duty to Keene. Shantz was an officer of Keene only from 1981 to 1982 and Cafiero was a Keene director only until 1986. Any claims against Shantz and Cafiero for breach of fiduciary duty or unlawful payment of dividends would be time-barred, for any acts they engaged in as officers or directors of Keene occurred more than six years prior to the filing of Keene's bankruptcy petition in December 1993 (or more than six years prior to the filing of the *Coleman/Huffman* actions in August 1993, assuming those actions tolled the statute of limitations).

#### b. Sufficiency of the Pleading

■ The claims set forth in Counts VII, XI, and XII are insufficiently pled with respect to the claims against the individual defendants, except Bailey. Indeed, the amended complaint fails to allege any specific fact concerning misconduct and/or wrongdoing on the part of any of the others.

■ Under New York law, the business judgment rule bars judicial inquiry into "actions of corporate directors taken in good faith and in the exercise of honest judgment in the lawful and legitimate furtherance of corporate purposes." *See Auerbach v. Bennett,* 47 N.Y.2d 619, 419 N.Y.S.2d 920, 926, 393 N.E.2d 994 (1979); *see generally* Dennis J. Block, *et al.,* The Business Judgment Rule 12–18 (5th ed. 1998) ("Block"). To overcome the presumption of legitimacy accorded to business decisions of the kind attacked here, the Second Circuit has held that a

plaintiff must "allege that the directors acted fraudulently or in bad faith; allegations of 'waste,' standing alone, will not be enough." *Stern v. General Elec. Co.*, 924 F.2d 472, 476 (2d Cir.1991); *see also* Block at 18–25.[6]

The amended complaint is bereft of specific allegations as to any bad faith or fraudulent intent on the part of Fichthorn, Heller,[7] Shantz, or Cafiero. Only one paragraph in the 119–page amended complaint refers specifically to Anderson, and that paragraph does not allege any fraudulent or bad faith conduct on his part. (Am.Cmplt.¶ 58). Nor are there facts alleged in the amended complaint to support the conclusory allegation that Mahoney, Metzger, or Mileaf "authorized or approved" any asset sales by Keene. As officers of Keene, as opposed to directors, they lacked authority to "authorize and approve" sales of Keene divisions and/or the payment of dividends. *See* NYBCL § 701 ("the business of a corporation shall be managed under the direction of its board of directors"). Nor are there any specific allegations that Mahoney, Metzger, or Mileaf acted fraudulently or in bad faith.[8]

The amended complaint, however, contains specific allegations against Bailey. He was chairman of Keene's board of directors commencing in 1981 and continuing during the period when all the Transactions took place. During this time, Bailey was simultaneously the chairman of Bairnco's board of directors. The amended complaint alleges specific facts concerning Bailey's active involvement in the purportedly fraudulent scheme. (*See, e.g.*, Am.Cmplt. ¶¶ 40, 41, 53, 68–71, 73–74, 76, 77, 81, 170–173). Indeed, the amended complaint alleges that "Bailey was the architect of the scheme to defraud." (*Id.* ¶ 18). Given the timing of his directorships and the fact that he was chairman of both Keene's board as well as Bairnco's board, plaintiffs have alleged sufficient facts to withstand a motion to dismiss on these claims against Bailey.[9]

In sum, Counts VII, XI, and XII are dismissed as to all individual defendants except Bailey.

---

**6.** Plaintiffs argue that the business judgment rule is a factual defense that cannot be resolved on a motion to dismiss, and that they have sufficiently alleged bad faith and fraudulent conduct. (Pls.Opp. at 93). The Court agrees that where the allegations of a complaint sufficiently suggest that directors or officers acted in bad faith, the question cannot be decided on a motion to dismiss. *See Ackerman v. 305 East 40th Owners Corp.*, 189 A.D.2d 665, 667, 592 N.Y.S.2d 365, 367 (1st Dep't 1993) ("[p]re-discovery dismissal of pleadings in the name of the business judgment rule is inappropriate where those pleadings suggest that the directors did not act in good faith."). In the instant case, however, the allegations of the amended complaint simply do not suggest, except as to Bailey, that the defendants acted in bad faith or fraudulently.

**7.** The amended complaint merely alleges that Heller aided and abetted a breach of fiduciary duty. Such a claim is not actionable. *See Lippe I*, 218 B.R. at 302–03 (dismissing the aiding and abetting a breach of fiduciary duty claim against the professional defendants in this case).

**8.** The only specific allegation in the amended complaint concerning Mahoney is that he authored a December 1980 memorandum recommending that Keene "proceed with the idea of establishing New Keene as a holding company." (Am.Cmplt.70). Aside from the obvious fact that any claim based upon this memorandum is untimely, it does not suffice to state a claim for a breach of fiduciary duty in any event.

As to Metzger, the amended complaint does not contain a single specific allegation as to what conduct on his part constituted a breach of fiduciary duty.

As to Mileaf, the allegations in the amended complaint pertain to conduct on his part that took place in 1980 and 1981. (Am.Cmplt.¶¶ 68, 69, 71, 74). During that time frame, Mileaf is alleged to have considered and sought advice concerning the problems that Keene's asbestos liabilities posed for future acquisitions. There is no allegation that Mileaf had any involvement whatsoever in the Transactions or any other alleged misconduct.

**9.** In his opposition to the motion to dismiss, Bailey does not even address these claims. Rather, his entire 69-page memorandum of law is devoted to arguing that the amended complaint fails to state a RICO claim and also that plaintiffs do not and cannot state a fraudulent conveyance claim. (*See generally* Bailey Mem. at 1–69). Bailey's memorandum of law is silent as to the breach of fiduciary duty and payment of unlawful dividends claims. That silence is telling.

In addition, instead of addressing plaintiffs' arguments, in his reply memorandum Bailey does little other than engage in inappropriate personal attacks on plaintiffs' counsel.

### 3. Conspiracy to Defraud

Count XIII purports to assert a claim for conspiracy to defraud. Under New York law, "a mere conspiracy to commit a [tort] is never of itself a cause of action." *Alexander & Alexander of New York, Inc. v. Fritzen,* 68 N.Y.2d 968, 510 N.Y.S.2d 546, 547, 503 N.E.2d 102 (1986) (quoting *Brackett v. Griswold,* 112 N.Y. 454, 467, 20 N.E. 376 (N.Y.1889)); *see also Heinfling v. Colapinto,* 946 F.Supp. 260, 265 (S.D.N.Y.1996). To sustain a claim for conspiracy, plaintiffs must plead wrongful conduct "constituting an independent tort." *East Coast Novelty Co. v. City of New York,* 842 F.Supp. 117, 122 (S.D.N.Y.1994); *see also Factory Point Nat'l Bank v. Wooden Indian Inc.,* 198 A.D.2d 563, 603 N.Y.S.2d 216, 218 (3d Dep't 1993).

The amended complaint conclusory states that "[a]t all relevant times ... [every individual defendant] knew or had reason to know that Keene's asbestos liabilities exceeded or would ultimately exceed its insurance coverage." (Am.Cmplt.279). Plaintiffs further allege that "for over ten years the individual defendants, *acting in concert to obtain personal benefit,* participated in a conspiracy to denude Keene and to strip and dismantle Keene's assets ... and to defraud Keene's asbestos creditors...." (*Id.* ¶ 280 (emphasis added)). Nowhere, however, do plaintiffs specify the conspiratorial conduct of the various defendants. Rather, the amended complaint simply states that the "formation of Bairnco, the development and execution of the Bairnco Acquisitions, the payment of unlawful dividends, the preparation and publication of misleading financial statements and annual reports, and the retention of Kidder, Peabody to render misleading fairness opinions, were all in furtherance of this conspiracy...." (*Id.* ¶ 281).

The claim fails as to all the named defendants for several reasons. First, plaintiffs lack standing to pursue this claim. Second, the claim is untimely with respect to conduct that occurred more than six years prior to August 1993. Third, as to several of the individual defendants, plaintiffs have failed to plead fraud, which is the underlying substantive tort on which this claim is based. Finally, even assuming plaintiffs have standing to bring this claim and that the claim is timely, it fails to allege even the most fundamental aspects of a conspiracy.

#### a. Standing

Plaintiffs stand in the shoes of Keene with respect to this claim. *See In re Granite Partners, L.P.,* 194 B.R. 318, 323–24 (Bkrtcy.S.D.N.Y.1996). Accordingly, plaintiffs may not bring a fraud claim against Keene's directors because here the directors' knowledge of the alleged fraud is imputed to Keene itself. *See, e.g., In re Crazy Eddie Sec. Litig.,* 802 F.Supp. 804, 817 (E.D.N.Y. 1992) ("If the fraud committed by ... top officers was on behalf of the corporation, their knowledge and actions are deemed those of the corporation."); *Saylor v. Lindsley,* 302 F.Supp. 1174, 1188 n. 12 (S.D.N.Y. 1969); *cf. In re Maxwell Newspapers, Inc.,* 164 B.R. 858, 868–70 (Bkrtcy.S.D.N.Y.1994) (holding that fraud committed by officers was against company not on its behalf) (citing *Cenco Inc. v. Seidman & Seidman,* 686 F.2d 449, 456 (7th Cir.), *cert. denied,* 459 U.S. 880, 103 S.Ct. 177, 74 L.Ed.2d 145 (1982)). More importantly, however, plaintiffs cannot allege fraud because the claim that defendants conspired to defraud Keene's creditors by its own terms belongs solely to Keene's creditors. Plaintiffs do not have standing to bring this claim against *any* of the named individual defendants.

#### b. Statute of Limitations

Assuming the statute of limitations was tolled as of August 11, 1993 with respect to this claim, most of the conduct plaintiffs allege was "conspiratorial" took place several years prior to August 11, 1987. In *Lippe II,* I held that there was no basis to "collapse" all the Transactions in the case. 225 B.R. at 857. Likewise, there is no basis upon which to "collapse" the allegedly fraudulent conduct. Nearly every identified act that plain-

tiffs contend was committed "in furtherance of this conspiracy" occurred prior to August 11, 1987.

### c. *Underlying Substantive Fraud Claim*

The only individual defendants against whom plaintiffs have even alleged fraud are Bailey, Fichthorn, Heller, Shantz, and Metzger, the defendants named in Count VI of the amended complaint. Accordingly, there is no underlying substantive tort on which to base a conspiracy to defraud claim as to Anderson, Cafiero, Mileaf, and Mahoney. Plaintiffs cannot as a matter of law, therefore, assert this claim against these four defendants. Plaintiffs' claim that these individuals can somehow be bootstrapped into this claim merely because they were officers and/or directors of Keene, Bairnco, and/or Bairnco subsidiaries lacks merit and the Court rejects it.

### d. *Sufficiency of the Pleading*

 Even assuming the foregoing reasons for dismissing this claim did not apply, the claim would still fail. To state a claim for conspiracy, the amended complaint must set forth facts supporting the claim that each of the alleged co-conspirators knowingly participated in the conspiracy. *In re Harvard Knitwear, Inc.*, 153 B.R. 617, 627-28 (Bkrtcy.E.D.N.Y.1993); *Gallant v. Kanterman*, 198 A.D.2d 76, 603 N.Y.S.2d 315, 318 (1st Dep't 1993). Moreover, it is not sufficient to merely identify an individual as a corporate officer. Rather, a corporate officer's participation in a conspiracy must be specifically set forth. *See State of New York v. Dairylea Coop., Inc.*, 570 F.Supp. 1213, 1216-17 (S.D.N.Y.1983).

 Construing the allegations in the light most favorable to plaintiffs, the amended complaint fails to identify any specifics concerning the alleged conspiracy and the claim that these nine individuals conspired together to defraud Keene's creditors. Although the amended complaint discusses the allegedly fraudulent transfers in detail, it lacks any specific allegation that there was an agreement among these nine individuals to join the purported conspiracy and/or that the alleged co-conspirators knowingly participated in the conspiracy. The wholly conclusory statement that "for over ten years the individual defendants, acting in concert to obtain personal benefit, participated in a conspiracy to ... defraud Keene's asbestos creditors" (Am.Cmplt.¶ 280) does not suffice. The claim is deficient as to all the individual defendants.

For all the above reasons, defendants' motion to dismiss Count XIII is granted.

### 4. *RICO*

For the reasons already discussed in the Court's prior opinions, the RICO claims (Counts XIV and XV of the amended complaint) are hereby dismissed with prejudice against the individual defendants. *See Lippe II*, 225 B.R. at 859-61; *Lippe I*, 218 B.R. at 303-05.

### *CONCLUSION*

The individual defendants' motions to dismiss are hereby granted in part and denied in part. Counts VI, XIII, XIV, and XV of the amended complaint are hereby dismissed as to all nine defendants. Counts VII, XI, and XII are hereby dismissed as to all defendants except Bailey. Plaintiffs can only pursue these counts against Bailey, however, for purported acts of misconduct that occurred subsequent to August 1987. Upon further consideration, Count VI of the amended complaint is also dismissed as to Bairnco.

In view of the circumstances of this case, I will deny any request by plaintiffs to replead any claim that I have dismissed.

SO ORDERED.